**John M. BETTIS, Plaintiff–Appellant,**

v.

**OSCAR MAYER FOODS CORPORA-TION and General Foods Corporation, Defendants–Appellees.**

No. 87–2901.

United States Court of Appeals, Seventh Circuit.

Argued Dec. 1, 1988.

Decided June 19, 1989.

K. Michael Latshaw, Willoughby & Latshaw, P.C., Decatur, Ill., for plaintiff-appellant.

Michael F. Rosenblum, Mayer, Brown & Platt, Chicago, Ill., Michael A. Brizel, General Foods Corp., White Plains, N.Y., Danuta Bembenista Panich, Mayer, Brown & Platt, Chicago, Ill., for defendants-appellees.

Before WOOD, Jr., RIPPLE, and MANION, Circuit Judges.

RIPPLE, Circuit Judge.

The plaintiff-appellant, John M. Bettis, filed a claim in federal court alleging that he had been discharged by Oscar Mayer Foods Corporation in retaliation for filing workers' compensation claims, that his discharge caused him intentional infliction of emotional distress, and that the parent company of Oscar Mayer, General Foods Corporation, was also liable for his discharge. Jurisdiction in the district court was based on diversity of citizenship pursuant to 28 U.S.C. § 1332. The district court adopted the magistrate's recommendation that the entire case was preempted by section 301 of the Labor Management Relations Act of 1947 (LMRA), 29 U.S.C. § 185(a),[1] and that Mr. Bettis had not exhausted his contractual remedies. It determined that *Lingle v. Norge Division of Magic Chef, Inc.*, 823 F.2d 1031 (7th Cir. 1987) (en banc), was dispositive of the entire case and that there were no genuine issues of material fact. Consequently, the court granted the companies' motion for summary judgment. Having the benefit of the Supreme Court's opinion in *Lingle v. Norge Division of Magic Chef, Inc.*, 486 U.S. 399, 108 S.Ct. 1877, 100 L.Ed.2d 410 (1988), which was not available to the district court when it ruled, we reverse and remand the case for proceedings in conformity with this opinion.

## I.

### Facts

John Bettis had been employed for approximately fifteen years by Oscar Mayer Foods Corporation (Oscar Mayer) in its Beardstown, Illinois slaughtering facility. Mr. Bettis was a member of District Local 431 of the United Food and Commercial Workers International Union, AFL-CIO-CLC (the Union). He worked in the boning department and the terms and conditions of his employment were governed by a collective bargaining agreement between Oscar Mayer and the Union. Mr. Bettis alleged that he received a number of work-related injuries during his employment. He maintains that, on December 11, 1981, he was afflicted with bilateral carpal tunnel syndrome and trigger finger syndrome affecting both wrists and hands. Appellant's Br. at App. 27-28. On the basis of this condition, Mr. Bettis filed a claim with the Illinois Industrial Commission (IIC) on February 16, 1983 and was awarded $6,250.15 for temporary total disability. Supplemental App. at 3.[2] In March 1982, Mr. Bettis sustained a cervical strain when a hog in a cooler fell on him. A second claim, based on this injury, was filed with the IIC on December 23, 1983. R. 16 at Ex. 1 D. On the same day, Mr. Bettis also reported to the IIC that he had received a cervical and lumbar strain of his neck and lower back on September 8, 1982, when the fork truck he was operating hit a "chuckhole." R. 16 at Ex. 1 C.

Mr. Bettis was discharged in November 1983. There is disagreement as to the events of November 17 and 18, 1983 that

---

1. Section 301 of the LMRA provides:
   (a) Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties....

29 U.S.C. § 185(a).

2. A claim for permanent disability on the carpal tunnel injury was also filed but it is not clear whether there has been an award made with respect to that filing.

led to this discharge. The appellees maintain that Mr. Bettis was examined by the Oscar Mayer company doctor on November 17 and that he was found to be physically unfit to drive the fork truck. Supplemental App. at 81. The next day, Mr. Bettis reported to work but no departmental jobs were available that Mr. Bettis could perform with his medical restrictions. Consequently, he was laid off pursuant to section F–47 of the collective bargaining agreement.[3] *Id.* Mr. Bettis' account of what took place on these two days is quite different. He maintains that, on November 17, while working the evening shift, he was told that there would be an increase in the production requirements in the boning department and that a meeting was scheduled for the next day at 4:00 p.m. R. 16 at 5. On the morning of November 18, 1983, Mr. Bettis contacted an attorney for the Occupational Safety and Health Administration (OSHA) to report the increased production requirements on the ground that they violated the Occupational Safety and Health Act. Mr. Bettis further alleges that OSHA then contacted Mr. Bettis' employer. *Id.* When Mr. Bettis reported for work on his regular shift, he was told that he was being laid off effective immediately. Mr. Bettis acknowledges that, on November 18, 1983, he "was informed that [he] was being laid off under paragraph 'F–47' of the Collective Bargaining Agreement in that a company doctor had restricted [him] from driving a fork truck, although [he] had been driving a fork truck for several months." R. 16 at Ex. 1, ¶ 6. Nevertheless, he asserts that the companies' explanation for his discharge was pretextual. Indeed, in response to the November layoff

or discharge, Mr. Bettis filed a grievance on May 9, 1984. In June 1984, before a hearing on the grievance, Mr. Bettis was rehired. On October 31, 1984, after the hearing, an arbitrator denied the grievance.

On January 31, 1985, Mr. Bettis was once again dismissed from his position.[4] Appellant's Br. at App. 17. After Mr. Bettis had been dismissed from his position, he sought relief through the appropriate grievance procedures. In July 1985, after the grievance was denied, the Union refused to take further action on his behalf. Mr. Bettis has not been rehired by Oscar Mayer.

On January 14, 1987, Mr. Bettis filed a complaint in the district court challenging his January 1985 discharge. He alleged that this discharge in January 1985 was in retaliation for exercising his rights under the Illinois Workers' Compensation Act, Ill. Rev.Stat. ch. 48, paras. 138.1–138.30, and the Occupational Safety and Health Act of 1970, 29 U.S.C. §§ 651–678, (Count I). He also claimed that his discharge constituted intentional infliction of emotional distress (Count II). These same allegations were made against General Foods Corporation (General Foods) on the basis that it, as the parent of Oscar Mayer, was responsible for all acts of its subsidiary (Counts III & IV). The companies maintain that, as a result of Mr. Bettis' various injuries, his physician placed numerous restrictions upon his ability to work. The companies assert that, by January 1985, these restrictions were so numerous and varied that Oscar Mayer had no position available that Mr. Bettis, with his seniority, could fill. Therefore, in accordance with Article F–47 of the collective

---

3. Section F–47 of the collective bargaining agreement provides that
   a. An employee forced into a job, by seniority, in his seniority department which that employee is physically unable to perform, will be excused from work until recalled, by seniority, to a job the employee is physically able to perform.
   b. An employee excused because of the circumstances described in (a.) above, will be recalled to a vacancy in some other department if the employee is physically able to perform the job.
   c. An employee excused because of circumstances described in (a.) above, or laid off in

normal department seniority order, who is recalled to his seniority department to a job he is physically unable to perform will continue to be excused until a job he is physically able to perform becomes available.

\*    \*    \*    \*    \*    \*

4. Mr. Bettis asserts that the dismissal occurred on January 31, 1985. Appellant's Br. at vii. The appellees assert that the dismissal occurred on February 1, 1985. Supplemental App. at 3. For this opinion the difference in dates does not matter; we will assume that the dismissal was made on January 31, 1985.

bargaining agreement, the companies placed Mr. Bettis on medical layoff. R. 10 at 5. General Foods and Oscar Mayer moved for summary judgment and this motion was granted by the district court on November 3, 1987. Mr. Bettis filed a notice of appeal on November 16, 1987. We held the appeal in abeyance pending the decision of the Supreme Court of the United States in *Lingle v. Norge Division of Magic Chef, Inc.*, 486 U.S. 399, 108 S.Ct. 1877, 100 L.Ed.2d 410 (1988).

## II.

### Ruling of the District Court

The district court initially referred this case to a magistrate for report and recommendation. Ruling without the benefit of the Supreme Court's opinion in *Lingle,* the magistrate concluded that all of the claims set forth in the complaint were preempted by section 301 and that the plaintiff had not exhausted his contractual remedies. With respect to the preemption issue, the magistrate found this court's en banc opinion in *Lingle* controlling:

> Having reviewed *Lingle,* it is concluded that *Lingle* is dispositive of this entire case. The parties agree that plaintiff's employment was governed by a collective bargaining agreement which provides for binding and final arbitration. The complaint, in its entirety, arises from the termination of plaintiff's employment, re-

gardless of whether it is characterized a discharge or a disability layoff. Therefore, consideration of plaintiff's claims under either a retaliatory discharge or infliction of emotional distress theory would require an interpretation of the collective bargaining agreement. *Lingle* teaches us that such interpretations can only be made in the context of a § 301 action. To conclude otherwise would be contrary both to the letter and spirit of *Lingle.*

R. 25 at 9. The district court, after reviewing the objections of the parties to the report and recommendation of the magistrate, determined that the analysis of the magistrate was correct and entered summary judgment for the defendants. This decision also was made before the Supreme Court's decision in *Lingle.*

## III.

### Discussion

■ In his brief before this court, Mr. Bettis presents one contention: the Supreme Court's decision in *Lingle* establishes that his claim alleging retaliatory discharge for the exercise of his rights under the Illinois workers' compensation statutes is not preempted by section 301. Consequently, the district court ought to consider it a claim based on state law and properly within its diversity jurisdiction.[5] In reply,

---

5. In his complaint, Mr. Bettis alleged, as a matter of state law, retaliatory discharge for the filing of an OSHA complaint. In addition, he alleged that the actions of the defendants constituted the intentional infliction of emotional distress. The district court held that these claims were also preempted by section 301. In his brief before this court, Mr. Bettis does not raise either of these claims. At oral argument, counsel made passing reference to them. These claims must both be deemed waived. We recognize that the claim of retaliation for filing an OSHA complaint was raised in the same count as the allegation of retaliatory discharge for exercising workers' compensation rights under the Illinois statute. Nevertheless, we do not believe that the issue is adequately preserved. As the record demonstrates, this issue involves a substantial question as to whether any cause of action based on state law is preempted by the federal statute. *See Taylor v. Brighton Corp.,* 616 F.2d 256 (6th Cir.1980). Since the appellees are entitled to defend the judgment on any

ground raised in the district court and specifically raised the preemption issue in the district court, it was incumbent on the appellant, had he wished to preserve this issue, to raise it explicitly and to present reasoned argument with respect to it. As we noted in *Beard v. Whitley County REMC,* 840 F.2d 405, 408–09 (7th Cir. 1988):

> Rule 28(a)(4) of the Federal Rules of Appellate Procedure mandates that an appellant must present in its brief the issues to the appellate court that the appellant desires to litigate. In addition, the issues must be supported by appropriate judicial authority. *Id.;* see *Coffey v. Van Dorn Iron Works,* 796 F.2d 217, 220 (7th Cir.1986); *Sanchez v. Miller,* 792 F.2d 694, 703 (7th Cir.1986), *cert. denied,* [479 U.S. 1056], 107 S.Ct. 933, 93 L.Ed.2d 984 (1987). "It is not the obligation of this court to research and construct the legal arguments open to parties, especially when they are represented by counsel." *Sanchez,* 792 F.2d at 703.

the appellees assert that this case is distinguishable from *Lingle*. They note that, in this case, the employer has countered the allegation of retaliatory discharge with the assertion that Mr. Bettis was furloughed for physical disability in accordance with the terms of the collective bargaining agreement. Therefore, they submit, the court must necessarily interpret the collective bargaining agreement in determining the merits of the plaintiff's claim.

## A.

◼ In our view, this case is controlled by the holding of the Supreme Court in *Lingle*. In *Lingle*, the Supreme Court emphasized that the appropriate approach is straightforward: "an application of state law is pre-empted by § 301 of the Labor Management Relations Act of 1947 only if such application requires the interpretation of a collective-bargaining agreement." 108 S.Ct. at 1885. As we recently noted in *Douglas v. American Information Technologies Corp.*, 877 F.2d 565 (7th Cir. 1989), this approach is straightforward because the policy concern requiring preemption in the section 301 context is also straightforward. Federal labor policy mandates that uniform federal law be the basis for interpreting collective bargaining agreements. This policy reduces the possibility "that individual contract terms might have different meanings under state and federal law." *Local 174, Teamsters v. Lucas Flour Co.*, 369 U.S. 95, 103, 82 S.Ct. 571, 577, 7 L.Ed.2d 593 (1962). Conflicting interpretations of contract terms "would inevitably exert a disruptive influence" on the collective bargaining process. *Id.* However, as we also noted in *Douglas*, at 569–70 (footnotes omitted):

> [F]ederal labor policy does not prevent states from providing workers with substantive rights independent of the collective bargaining relationship. *See Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 212, [105 S.Ct. 1904, 1911, 85 L.Ed.2d 206] (1985). Indeed, in *Lingle*, the Court

made it clear that, so long as a state-law claim can be resolved without interpreting the agreement itself, the claim is "independent" of the agreement for the purposes of section 301. 108 S.Ct. at 1883. Thus, "§ 301 preempts state law only insofar as resolution of the state-law claim requires the interpretation of a collective-bargaining agreement." *Id.* at 1883 n. 8. The mere fact that the state-law analysis might require the state court to focus on the same facts that would control resolution of an employee's contractual remedy is not enough to require preemption of the state-law claim. *Id.* at 1883. If adjudication of the state-law claim does not require a court to interpret any term of a collective bargaining agreement, then that state-law claim is not preempted by section 301. *See id.* at 1881–82 (analysis of the elements of Illinois tort of retaliatory discharge does not require court to interpret collective bargaining agreement).

## B.

Following the methodology set forth by the Supreme Court in *Lingle*, our next step must be to analyze the elements of the state-based cause of action for retaliatory discharge so that we may later determine whether adjudication of such a claim would require an interpretation of the collective bargaining agreement. Here, our task is quite easy because the Supreme Court dealt with the same cause of action in *Lingle*. " '[T]o show retaliatory discharge, [Mr. Bettis] must set forth sufficient facts from which it can be inferred that (1) he was discharged or threatened with discharge and (2) [Oscar Mayer's] motive in discharging or threatening to discharge him was to deter him from exercising his rights under the Act or to interfere with his exercise of those rights.' " *Lingle*, 108 S.Ct. at 1882 (quoting *Horton v. Miller Chem. Co.*, 776 F.2d 1351, 1356 (7th Cir. 1985), *cert. denied*, 475 U.S. 1122, 106 S.Ct. 1641, 90 L.Ed.2d 186 (1986)).[6] Mr. Bettis

---

**6.** It is well established that discharge in retaliation for exercising rights under the workers' compensation laws is actionable in Illinois. *See*

*Kelsay v. Motorola, Inc.*, 74 Ill.2d 172, 23 Ill.Dec. 559, 384 N.E.2d 353 (1978). The cause of action applies to both at-will employees and those cov-

alleged that he was discharged from his position. R. 1 at 3–4. This allegation satisfies the first element of the Illinois tort of retaliatory discharge. To satisfy the second element, Mr. Bettis alleges that Oscar Mayer's actions were done to retaliate against him for exercising his rights under the Illinois Workers' Compensation Act. *Id.*

■ As the Supreme Court noted in *Lingle*, these elements can be evaluated without interpreting the collective bargaining agreement. In *Lingle*, the Supreme Court characterized each of the aspects of the retaliatory discharge claim as

> purely factual questions [that pertain] to the conduct of the employee and the conduct and motivation of the employer. Neither of the elements requires a court to interpret any term of a collective-bargaining agreement.... Thus, the state-law remedy in this case is "independent" of the collective-bargaining agreement in the sense of "independent" that matters for § 301 pre-emption purposes: resolution of the state-law claim does not require construing the collective-bargaining agreement.

108 S.Ct. at 1882 (footnote omitted).[7] This approach is not altered by the defendants' assertion, by way of defense, that the discharge rested on another ground—physical incapacity—that is based in the collective bargaining agreement. As the Supreme Court pointed out in *Lingle*, the court's task is complete in a retaliatory discharge case when it determines, as a factual matter, whether the employer's motivation for the discharge was the employee's filing of a workers' compensation claim or some other motive. If it determines that the motive was something other than the filing of a workers' compensation claim, it need not also determine whether the other motive was a legitimate one. It must simply determine whether such a motive exists—not whether, as a matter of law, the collective bargaining agreement justifies such a motive.[8]

### C.

In this court, General Foods, the parent corporation, also submits that it ought to be dismissed from this case because it cannot be held answerable for the actions of its subsidiary. Because the district court decided this case on the preemption issue alone, and, under its analysis did not have to deal with this matter, we believe that this matter should be left open for resolution during the course of further proceedings.

### Conclusion

The appellant's claim of retaliatory discharge for the exercise of workers' compensation rights, the only substantive claim properly before the court, is not preempted by section 301. Accordingly, pursuant to its diversity jurisdiction, the district court may proceed to adjudicate the matter. It is open to the district court to determine whether General Foods Corporation ought to remain a party defendant. Accordingly,

---

ered by union contracts. *Midgett v. Sackett–Chicago, Inc.,* 105 Ill.2d 143, 85 Ill.Dec. 475, 473 N.E.2d 1280 (1984), *cert. denied,* 474 U.S. 909, 106 S.Ct. 278, 88 L.Ed.2d 243 (1985); *Gonzalez v. Prestress Eng'g Corp.,* 115 Ill.2d 1, 104 Ill.Dec. 751, 752, 503 N.E.2d 308, 309 (1986), *cert. denied,* 483 U.S. 1032, 107 S.Ct. 3248, 97 L.Ed.2d 779 (1987).

7. The Supreme Court of Illinois has established that a claim for retaliatory discharge

> exists independent of any privately negotiated contract rights or duties.... It bears noting that even if the labor contract covering [the employee] recited the rights and obligations arising under the Workers' Compensation Act and expressly provided that a discharge in contravention of the Act was without "just cause," the claim[] would still fall entirely

outside the preemptive sphere of section 301. Neither an employer nor a union can strip an employee of the protections of Illinois law by merely restating the rights and obligations that arise thereunder in a private labor agreement.

*Gonzalez,* 104 Ill.Dec. at 756, 503 N.E.2d at 313.

8. The defendant may not destroy the state-law character of the plaintiff's suit merely by raising a legal defense based on federal law. *See Caterpillar Inc. v. Williams,* 482 U.S. 386, 393, 398–99, 107 S.Ct. 2425, 2430, 2433, 96 L.Ed.2d 318 (1987). Of course, in determining the validity of the federal defense, the court, federal or state, is obliged to apply federal law. *Id.* at 398–99, 107 S.Ct. at 2433.

the judgment of the district court is reversed and the case is remanded for proceedings in conformity with this opinion.

REVERSED AND REMANDED.