**Joseph PANTOJA, et al.,**
**Plaintiffs–Appellants,**

v.

**TEXAS GAS AND TRANSMISSION CORPORATION, et al.,**
**Defendants–Appellees.**

No. 88–1474.

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 20, 1989.

Decided Nov. 30, 1989.

Rehearing and Rehearing En Banc
Denied Feb. 1, 1990.

Dennis Carlson (argued), Chicago, Ill., for plaintiffs-appellants.

Leonard R. Kofkin (argued), Fagel, Haber & Maragos, Chicago, Ill., for defendants-appellees.

Before BAUER, Chief Judge, KANNE, Circuit Judge and ESCHBACH, Senior Circuit Judge.

KANNE, Circuit Judge.

The plaintiffs filed a complaint in the state court, alleging that the defendants had discharged them in retaliation for filing and pursuing a lawsuit in federal district court in 1977. The federal district court granted the defendants' petition for removal, finding that the state action was pre-empted by section 301 of the Labor Management Relations Act of 1947, 29 U.S.C. § 185 ("LMRA"). The district court subsequently granted the defendants' motion to dismiss for failure to exhaust the grievance remedies of the governing collective bargaining agreement and because the statute of limitations had expired.

The plaintiffs filed a motion to vacate and reconsider, alleging that the state action in fact was not pre-empted. The plaintiffs also attacked the judgment entered in the 1977 federal suit, alleging that the earlier judgment was obtained through fraud and that the district judge in the 1977 action improperly failed to recuse himself. The district court denied the plaintiffs' motion to vacate and reconsider. We affirm in part and reverse in part.

## I. BACKGROUND

The plaintiffs are members of Teamsters Local Union 705 and former truck drivers for Mid–Continent Freight Lines. Mid–Continent was purchased by another company in June of 1977, causing the plaintiffs to lose their seniority rights. The plaintiffs filed a grievance with their local but received what they believed were unsatisfactory results. They consequently filed a lawsuit in the Northern District of Illinois against their employers and their union, alleging breach of a collective-bargaining agreement and a violation of the duty of fair representation under section 301 of the LMRA.

The district court granted the local's motion for summary judgment because the plaintiffs had failed to exhaust internal union remedies before instituting the suit. In January, 1981, the district court conducted a bench trial on the plaintiffs' claims against the employers. The court held that the employers did not breach the collective-bargaining agreement when the plaintiffs were placed at the bottom of the seniority list following the sale of the employer's business. On September 1, 1982, in an unpublished order, this court affirmed the district court's ruling upon the local's summary judgment motion as well as the judgment in favor of the employers. The United States Supreme Court denied the plaintiffs' petition for a writ of certiorari. *Pantoja v. All–American Transport, Inc.*, 459 U.S. 1172, 103 S.Ct. 817–18, 74 L.Ed.2d 1015 (1983).

In November or December of 1979, while their case was pending in the district court, the plaintiffs were laid off from their jobs. For the next two years, the plaintiffs' employer claimed that it had insufficient work to require additional drivers. Consistent with the collective-bargaining agreement, the plaintiffs were automatically terminated after two years.

On October 8, 1986, the plaintiffs filed a lawsuit in state court, basically alleging that the lay-off and automatic termination provision of the collective-bargaining agreement worked as a "discharge" which their employers had used as a means of retaliation for their decision to institute the 1977 federal litigation. The employers-defendants filed a petition for removal in the United States District Court for the Northern District of Illinois, alleging that the plaintiffs' state court suit actually was a section 301 action under the LMRA. The district court granted this petition.

Thereafter, the defendants filed a motion to dismiss, arguing that the action was barred because the plaintiffs had failed to bring it within six months of the failure to recall or the automatic termination and because the original reduction in seniority, out of which the termination arose by virtue of the automatic termination provision, already had been adjudicated in the 1977 federal litigation and subsequent appeals. The district court granted the motion to dismiss, finding that the state court action in fact was a section 301 action under our decision in *Lingle v. Norge Div. of Magic Chef, Inc.*, 823 F.2d 1031 (7th Cir.1987) (en banc). The court then found the dismissal

958

was appropriate because the plaintiffs had failed to exhaust the grievance and arbitration provisions of the collective bargaining agreement before filing the action and also had failed to bring the action within the six-month limitations period for section 301 suits.

The plaintiffs subsequently filed a motion to vacate and reconsider, stating that their action was not pre-empted under section 301. The plaintiffs also alleged that the district court had failed to rule upon their contentions that the judgment entered in the 1977 federal litigation was void or voidable. They contended that the adverse judgments had been procured by "extrinsic fraud" committed by their own attorney during the course of the 1977 litigation. They also alleged that the judgment was void or voidable because they believed that the impartiality of the district judge who had presided over the 1977 litigation was in question.

Based again upon *Lingle*, the district court declined to reconsider its earlier section 301 ruling. It also ruled that the plaintiffs had failed to bring a timely motion to challenge the judgments entered in the 1977 litigation; Rule 60(b) of the Federal Rules of Civil Procedure provides that motions for relief from judgment based upon fraud by an adverse party may be made only within one year after judgment was entered. The court also ruled that "[n]o 'reasonable' person could question [the district judge]'s impartiality...." Finally, the court denied the defendants' motion for Rule 11 sanctions, although it did "warn Plaintiffs that 'enough is enough.'"

## II. DISCUSSION

The plaintiffs appeal from the district court's denial of their motion to vacate and reconsider. The plaintiffs basically raise three issues: (1) whether their state court action was pre-empted under section 301 of the LMRA; (2) whether Rule 60(b) of the Federal Rules of Civil Procedure prohibits their attempt to attack the judgment entered in the 1977 litigation after more than one year; and (3) whether the district court correctly concluded that the district judge's

impartiality in the 1977 litigation cannot be questioned.

### A. Retaliatory Discharge and Section 301

After the district court relied upon our decision in *Lingle* to find that the plaintiffs' state court action was preempted under section 301 of the LMRA, the United States Supreme Court granted certiorari to consider the pre-emptive effect of section 301 in retaliatory discharge cases.

In *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, ——, 108 S.Ct. 1877, 1885, 100 L.Ed.2d 410 (1988), the Supreme Court held that "an application of state law is pre-empted by § 301 of the Labor Management Relations Act of 1947 only if such application requires the interpretation of a collective bargaining agreement." *See also Bettis v. Oscar Mayer Foods Corp.*, 878 F.2d 192, 195 (7th Cir. 1989); *Nelson v. Central Ill. Light Co.*, 878 F.2d 198, 201 (7th Cir.1989); *Douglas v. American Information Technologies Corp.*, 877 F.2d 565, 569 (7th Cir.1989). We have stated that this holding:

is straightforward because the policy concerned requiring pre-emption in the section 301 context is also straightforward. Federal labor policy mandates that uniform federal law be the basis for interpreting collective bargaining agreements. This policy reduces the possibility "that individual contract terms might have different meanings under state and federal law." *Local 174, Teamsters v. Lucas Flour Co.*, 369 U.S. 95, 103, 82 S.Ct. 571, 577 [7 L.Ed.2d 593] (1962). Conflicting interpretations of contract terms "would inevitably exert a disruptive influence" on the collective bargaining process. *Id.*

*Bettis*, 878 F.2d at 196; *Douglas*, 877 F.2d at 569; *see also Nelson*, 878 F.2d at 201. Thus, after *Lingle*, no state-based cause of action is pre-empted by section 301 of the LMRA merely because a state court might focus upon the same facts which would be

considered when resolving a dispute under a collective-bargaining agreement.[1]

After making this broad holding, the Supreme Court applied its pronouncements to determine specifically if a state-based action for retaliatory discharge is pre-empted under section 301. The Court stated, " 'To show retaliatory discharge, [a plaintiff] must set forth sufficient facts from which it can be inferred that (1) he was discharged or threatened with discharge and (2) [the defendant]'s motive in discharging or threatening to discharge him was to deter him from exercising his rights under the Act or to interfere with his exercise of those rights.' " 486 U.S. at —, 108 S.Ct. at 1882 (quoting *Horton v. Miller Chem. Co.*, 776 F.2d 1351, 1356 (7th Cir.1985), *cert. denied*, 475 U.S. 1122, 106 S.Ct. 1641, 90 L.Ed.2d 186 (1986)). It characterized each element as involving:

> purely factual questions [that pertain] to the conduct of the employee and the conduct and motivation of the employer. Neither of the elements requires a court to interpret any term of a collective-bargaining agreement.... Thus, the state-law remedy in this case is "independent" of the collective-bargaining agreement in the sense of "independent" that matters for § 301 pre-emption purposes: resolution of the state-law claim does not require construing the collective-bargaining agreement.

486 U.S. at —, 108 S.Ct. at 1882 (footnote omitted).

Since *Lingle*, we have addressed very similar issues with similar results. For example, in *Bettis* we noted that:

> the court's task is complete in a retaliatory discharge case when it determines, as a factual matter, whether the employer's motivation for the discharge was the employee's filing of a workers' compensation claim or some other motive. If it determines that the motive was something other than the filing of a workers' compensation claim, it need not also determine whether the other motive was a legitimate one. It must simply determine whether such a motive exists—not whether, as a matter of law, the collective bargaining agreement justifies such a motive.

878 F.2d at 197 (footnote omitted).

■ On the basis of *Lingle*, and our subsequent statements in *Bettis, Douglas,* and *Nelson,* we believe that the plaintiffs' state-law action in fact is not pre-empted under section 301 of the LMRA. The defendants correctly note that the plaintiffs' complaint is replete with references to the collective-bargaining agreement.[2] However, the complaint, as the district court found, is in effect one for retaliatory discharge. Merely because the plaintiffs in-

---

1. Since *Lingle* was decided, we have considered the Supreme Court's holding in at least three retaliatory discharge cases. We have stated:

   > [F]ederal labor policy does not permit states from providing workers with the substantive rights independent of the collective bargaining relationship. *See Allis–Chalmers Corp. v. Lueck,* 471 U.S. 202, 212, 105 S.Ct. 1904, 1911, 85 L.Ed.2d 206 (1985). Indeed, in *Lingle,* the Court made it clear that, so long as a state-law claim can be resolved without interpreting the agreement itself, the claim is "independent" of the agreement for the purposes of section 301. 108 S.Ct. at 1883. Thus, "§ 301 pre-empts state law only insofar as resolution of the state-law claim requires the interpretation of a collective-bargaining agreement." *Id.* at 1883 n. 8. The mere fact that the state-law analysis might require the state court to focus on the same facts that would control resolution of an employee's contractual remedy is not enough to require pre-emption of the state-law claim. *Id.* at 1883. If adjudication

   > of the state-law claim does not require a court to interpret any term of a collective bargaining agreement, then that state-law claim is not pre-empted by section 301. *See Id.* at 1881–82 (analysis of the elements of Illinois tort of retaliatory discharge does not require a court to interpret collective bargaining).

   *Douglas,* 877 F.2d at 569–70 (footnotes omitted); *see also Nelson,* 878 F.2d at 202.

2. For example, the complaint alleges that the plaintiffs were members of the Teamsters, that a collective-bargaining agreement was in effect in 1977–79, that they filed a grievance pursuant to the agreement, that in 1977 they filed a lawsuit in federal district court alleging breach of the agreement, that prior to the trial of the 1977 lawsuit they were laid off under the agreement, that the layoff and subsequent failure to recall within two years and corresponding automatic termination under the agreement constituted a "discharge," and that termination was a deliberate and conscious effort to violate the "contractual employment rights of the Plaintiffs."

cluded references to the collective-bargaining agreement which served as identifiers to prove the "discharge" and "motive" elements of their claim does not mean that an Illinois state court in fact would have to interpret the terms of that agreement. Instead, the state court would only concentrate upon whether a discharge occurred and what motivated the discharge.[3] Therefore, we hold that the plaintiffs' state law claim was not pre-empted under section 301 and that the claim must be remanded to the state court.[4]

### B. *The Plaintiffs' Rule 60(b) Motion*

The plaintiffs also appeal the district court's denial of their Rule 60(b) motion attacking the judgment entered in the 1977 litigation. The plaintiffs argued below that the attorney who represented their interest in the 1977 litigation may have had a "personal interest in appeasing an opposing party or its attorney" and thus may have been "more interested in losing the case to please a provider of lucrative union business than in winning a case for a handful of malcontents, misfits and union outcasts or outsiders." On this basis, they sought to attack the prior judgment under Rule 60(b)(3) and Rule 60(b)(6).

■ To the extent that they appeal the district court's decision under Rule 60(b)(3), we agree with the district court that their motion was clearly untimely. Fed.R.Civ.P. 60(b) (stating that a court may relieve a party from a final judgment for "fraud ... misrepresentation, or other misconduct of an adverse party," but only if a motion is made "not more than one year after the judgment ... was entered or taken"). We

also hold that Rule 60(b)(6) does not afford the plaintiffs a basis for relief.

■ Clearly, a court may relieve a party from a final judgment for "any other reason justifying relief from the operation of the judgment." Fed.R.Civ.P. 60(b)(6). However, this provision should only be employed in the most extraordinary of circumstances. Here, the plaintiffs cannot demonstrate that such relief is deserved or necessary to protect their interests. Even if their allegations of attorney misconduct are true, Rule 60(b)(6) does not address their situation. Instead, the plaintiffs' remedy lies against the attorney, advice which they apparently already have received and acted upon. *See Peterson v. Intini*, No. 87 C 1923, *dismissed with prejudice* (May 29, 1987). We therefore hold the district court properly rejected their Rule 60(b) motion to vacate the judgment entered in the 1977 litigation.[5]

### C. *Failure to Disclose*

■ The plaintiffs also alleged below that the presiding judicial officer in the 1977 litigation—Judge Frank McGarr—failed to disclose an interest in the Teamsters Union and to recuse himself. Judge McGarr had represented the Central States Pension Fund (a trust fund administered by trustees of both the Teamsters Union and participating employers) when he was an attorney in private practice prior to assuming the federal bench in 1970. The Central States Pension Fund has never been a party to this or prior litigation. Moreover, even if it were relevant, there is no indication that Judge McGarr ever represented the Teamsters Union or any Teamsters Local.

---

3. Contrary to the defendants' assertions, the state court would not be required to interpret the lay off, seniority, and automatic termination provisions of the collective-bargaining agreement. The court would merely ascertain the defendants' motives and then determine whether they employed whatever means were available to discharge the plaintiffs. As we stated in *Bettis*, the state court "must simply determine whether such a motive exists—not whether, as a matter of law, the collective bargaining agreement justifies such a motive." 878 F.2d at 197.

4. Any claims of res judicata which the defendants wish to make as to specific issues and facts litigated in the 1977 federal lawsuit must be resolved by the Illinois state court. Therefore, the district court's intimations as to the effects of the doctrine of res judicata are not controlling.

5. We also note that the district court correctly concluded that their motion was untimely to the extent that they wished to introduce newly discovered evidence to attack the judgment. *See* Fed.R.Civ.P. 60(b).

There is no direct affiliation between the Central States Pension Fund and the Teamsters Union (or Local 705), a fact which counsel for the plaintiffs grudgingly admitted at oral argument. Therefore, there was plainly no conflict and no reason for recusal. Thus, the portions of the plaintiffs' brief devoted to Judge McGarr's alleged failure to disclose a conflict and failure to recuse himself were baseless and unwarranted and deserve less attention than the back of the hand we now give it.

## III.   CONCLUSION

The plaintiffs' state law action may be adjudicated without interpreting the prevailing collective-bargaining agreement and thus is not pre-empted by section 301 of the LMRA. Therefore, the judgment of the district court dismissing the plaintiffs' complaint is REVERSED and the case is REMANDED to the district court. We ORDER that the action be remanded to the state courts for further proceedings. The district court's decision with respect to the plaintiffs' motion to vacate and reconsider is in all respects AFFIRMED.