HARVEY LAMBERT, Plaintiff-Appellee, v. THE CITY OF LAKE FOREST, Defendant-Appellant.

Second District   No. 2—88—0925

Opinion filed August 3, 1989.

NASH and REINHARD, JJ., specially concurring.

Sarah Hansen Sotos and Elizabeth A. Brown, both of Judge & Knight, Ltd., of Park Ridge (Patrick J. Fanning, of counsel), for appellant.

Kathleen R. Keller, of Law Offices of Patrick A. Salvi, of Waukegan (Albert J. Salvi, of counsel), for appellee.

JUSTICE McLAREN delivered the opinion of the court:
Defendant, City of Lake Forest, appeals from the denial of its post-trial motion. After a jury trial, the court entered judgment on the verdict in favor of plaintiff, Harvey Lambert. Lambert was awarded $98,265 based upon his complaint for retaliatory discharge. We reverse.

Lambert began working for the City of Lake Forest (City) in 1966 as a maintenance man in the Parks Department. He was an at-will employee throughout his tenure with the City. He received several promotions and became foreman of the streets department in 1979. In late 1981, the City formulated a plan to reorganize the City's administrative setup. As a result of this reorganization, the positions of foreman of streets and foreman of sanitation were to be combined into one foreman's position to be filled by Lambert. Lambert assumed this new position in February 1982, retaining his designation as streets foreman and preparing to assume the duties of sanitation foreman in January 1983.

On September 29, 1982, Anthony Mazza, superintendent of fleet maintenance, committed suicide. Mazza was one of the employees affected by the reorganization. Following the reorganization, Mazza appeared to be under increased stress or anxiety. The day after the suicide, Lambert told his supervisors, LeRoy Baur (Baur) and Harold Robson (Robson), that he thought Mazza's suicide was brought about by job pressures. In March 1983, the City received an application for

adjustment of a workers' compensation claim filed with respect to the Mazza suicide.

On April 28, 1983, Robson convened a meeting of the supervisory personnel of the City, including Lambert. Robson informed everyone that the City was involved in a lawsuit filed by Mrs. Mazza on behalf of her late husband and that the suit would mean a lot of money to the City. He also stated that the City investigator and attorney would be conducting interviews with 9 or 10 of the employees on that day. Robson informed those in attendance that neither they nor their men should talk to Mrs. Mazza's attorney and should inform management if Mrs. Mazza's attorney contacted them.

After the meeting, Lambert told Baur that he did not want to be interviewed. Baur stated that he told Lambert to inform the City investigator and attorney that he did not want to talk. Lambert stated that he told Baur the suicide was job related, and Baur told him that he had better not tell the investigator or attorney that. Lambert's interview lasted approximately five minutes because he refused to provide any information.

Lambert's next job performance evaluation was conducted on August 1, 1983. This evaluation contained comments on many areas in which Lambert's job performance was suspect. After reviewing Baur's comments, Robson indicated that Lambert would be evaluated again on December 1, 1983. Robson also noted that, "failure to show improvement will require a reassessment of [Lambert's] value to the organization and reassignment to other duties."

On November 28, 1983, Baur evaluated Lambert's performance and noted that Lambert's effort did not meet the expectations the City had of a person in this position. Furthermore, Baur stated that, "in my opinion, Harvey is not presently in a position where he can be of the most advantage to the city."

On December 12, 1983, Lambert attended a meeting with Baur, Robson and John Fisher, the city's personnel director. Lambert was offered a check for $4,000 and asked to sign a letter of resignation. Lambert refused. He was then discharged. Lambert met with John Fischbach, the city manager, Robson and Fisher on January 6, 1984, and again on January 26, 1984. At the latter meeting, Lambert was offered a check for $9,500 and asked to sign a letter of resignation. Again, Lambert refused.

On October 29, 1986, Lambert filed a 10-count complaint against the City, Fischbach, Baur, Robson and Fisher, for retaliatory discharge and intentional infliction of emotional distress. The basis of the complaint was that Lambert was fired for failing to give favorable

information or testimony on behalf of the City in the workers' compensation claim filed by the heirs of Mazza.

On December 23, 1987, the defendants filed a motion for summary judgment. The trial court granted summary judgment in favor of defendants on nine counts. All of the individual defendants were dismissed from the suit, and Lambert's claim for intentional infliction of emotional distress was also disposed of. The surviving count of the complaint was count I against the City for retaliatory discharge. The court found that a question of material fact existed, and, therefore, the case proceeded to trial on count I.

At the close of evidence, the City filed a motion for a directed verdict. This motion was denied and the case was submitted to the jury. The jury returned a verdict in favor of plaintiff and awarded damages in the sum of $98,265. Judgment was entered on the verdict. The City filed a post-trial motion which was denied on August 26, 1988. This appeal followed.

■ Defendant contends that the trial court erred by denying summary judgment on count I of its complaint. A prior order denying a motion for summary judgment is not reviewable after an evidentiary trial, as any error in the denial is merged in the subsequent trial. (*Banwart v. Okesson* (1980), 83 Ill. App. 3d 222, 225; *Romano v. Bittner* (1987), 157 Ill. App. 3d 15, 22.) Consequently, we need not review the trial court's order denying summary judgment on count I of plaintiff's complaint.

Defendant contends that the issue in this case is whether the trial court improperly expanded the tort of retaliatory discharge. Phrasing the issue in this manner does not provide us with an understanding of the actual issue in this case, and only after reading appellant's not-so-straightforward brief were we able to determine that the actual threshold issue on review is whether plaintiff's complaint states a cause of action for retaliatory discharge. While defendant did not file a motion to dismiss pursuant to section 2—615 of the Illinois Code of Civil Procedure (Ill. Rev. Stat. 1985, ch. 110, par. 2—615), such an attack may be made at any time and by any means if it appears that, as a matter of law, the complaint wholly and absolutely fails to state a cause of action which the law will recognize. (*Naiditch v. Shaf Home Builders, Inc.* (1987), 160 Ill. App. 3d 245, 258; *Wagner v. Kepler* (1951), 411 Ill. 368, 371.) A complaint that fails to state a cause of action cannot support a judgment. (*Orthopedic & Reconstructive Surgery, S.C. v. Kezelis* (1986), 146 Ill. App. 3d 227, 231.) As stated in *Wagner*: "The nature of this contention requires that it be considered first." (*Wagner*, 411 Ill. at 371.) We find that plaintiff's complaint

does state a cause of action for retaliatory discharge for the reasons stated below.

In *Kelsay v. Motorola, Inc.* (1978), 74 Ill. 2d 172, our supreme court first recognized the tort of retaliatory discharge. However, the common-law principle that an employer may fire an employee at will for any reason or no reason is still the law in Illinois. (*Barr v. Kelso-Burnett Co.* (1985), 106 Ill. 2d 520, 525.) Our supreme court has expressed a narrow interpretation of the tort of retaliatory discharge, and the court does not support the expansion of this tort. (*Barr*, 106 Ill. 2d at 525.) To establish a cause of action for retaliatory discharge, the plaintiff must show: (1) that the employee was discharged in retaliation for the employee's activities; and (2) that the discharge is in contravention of a clearly mandated public policy. *Palmateer v. International Harvester Co.* (1981), 85 Ill. 2d 124, 134; *Colley v. Swift & Co.* (1984), 129 Ill. App. 3d 812, 818.

Defendant contends that it is the second element of retaliatory discharge that is absent here. The discharge was not in contravention of clearly mandated public policy. Therefore, no cause of action for retaliatory discharge can lie.

The court in *Palmateer*, in discussing what constitutes clearly mandated public policy, stated:

> "There is no precise definition of the term. In general, it can be said that public policy concerns what is right and just and what affects the citizens of the State collectively. It is to be found in the State's constitution and statutes and, when they are silent, in its judicial decisions." (*Palmateer*, 85 Ill. 2d at 130.)

Specifically, with respect to retaliatory discharge, the court stated that "a matter must strike at the heart of a citizen's social rights, duties, and responsibilities before the tort will be allowed." *Palmateer*, 85 Ill. 2d at 130.

Illinois courts have steadfastly opposed the expansion of the tort of retaliatory discharge. A review of all retaliatory discharge cases in Illinois reveals that, with one exception, retaliatory discharge actions are allowed in only two settings. The first situation is when an employee is discharged for filing a claim under the Workers' Compensation Act (Ill. Rev. Stat. 1987, ch. 48, par. 138.1 *et seq.*). (See *Kelsay*, 74 Ill. 2d 172; *Midgett v. Sackett-Chicago, Inc.* (1984), 105 Ill. 2d 143; *Gonzalez v. Prestress Engineering Corp.* (1986), 115 Ill. 2d 1; *Wyatt v. Jewel Cos.* (1982), 108 Ill. App. 3d 840; *Colley*, 129 Ill. App. 3d 812.) Illinois has also recognized a cause of action when the employee is injured and is discharged in anticipation of a workers' compensation

claim. See *Hinthorn v. Roland's of Bloomington, Inc.* (1988), 119 Ill. 2d 526; *Wolcowicz v. Intercraft Industries Corp.* (1985), 133 Ill. App. 3d 157.

In *Kelsay*, the court, recognizing the public policy behind the Workmen's Compensation Act, stated:

> "[T]he fundamental purpose of the Act *** was to afford protection to employees by providing them with prompt and equitable compensation for their injuries. [Citation.]

> The Workmen's Compensation Act, in light of its beneficent purpose, is a humane law of a remedial nature. [Citation.] It provides for efficient remedies for and protection of employees and, as such, promotes the general welfare of this State. Consequently, its enactment by the legislature was in furtherance of sound public policy. [Citation.] We are convinced that to uphold and implement this public policy a cause of action should exist for retaliatory discharge." *Kelsay*, 74 Ill. 2d at 180-81.

The second situation in which the tort of retaliatory discharge has been recognized is when an employee is discharged for reporting illegal or improper conduct, sometimes referred to as "whistle blowing." See, *e.g.*, *Palmateer*, 85 Ill. 2d 124 (cause of action allowed when employee was discharged for informing authorities of co-employee's possible criminal activity and also cooperating with investigation); *Witt v. Forest Hospital, Inc.* (1983), 115 Ill. App. 3d 481 (cause of action allowed when employee/nurse was discharged for providing information to the Guardianship and Advocacy Commission about patient care at the employer/hospital); *Bartley v. University Asphalt Co.* (1984), 129 Ill. App. 3d 231 (cause of action allowed when employee was discharged for cooperating in an FBI investigation of the employer); *Johnson v. World Color Press, Inc.* (1986), 147 Ill. App. 3d 746 (cause of action allowed when employee was discharged after complaining to his superiors about certain accounting practices of the employer which employee believed to be violations of Federal securities laws); *Shores v. Senior Manor Nursing Center, Inc.* (1988), 164 Ill. App. 3d 503 (cause of action allowed when employee/nurse's assistant was discharged after reporting to administrator that the full-time nurse, an LPN, was not performing her duties properly).

In *Palmateer*, the plaintiff/employee alleged that he was fired because he agreed to cooperate with law enforcement officials investigating the criminal conduct of a co-employee. In discussing the policy considerations present, the court stated:

> "There is no public policy more basic, nothing more implicit in the concept of ordered liberty [citation], than the enforcement

of a State's criminal code. ***

*** 'Public policy favors the exposure of crime, and the cooperation of citizens possessing knowledge thereof is essential to effective implementation of that policy. ***' (*Joiner v. Benton Community Bank* (1980), 82 Ill. 2d 40, 44.) ***

The foundation of the tort of retaliatory discharge lies in the protection of public policy, and there is a clear public policy favoring investigation and prosecution of criminal offenses." *Palmateer*, 85 Ill. 2d at 132-33.

In *Herbster v. North American Co. For Life & Health Insurance* (1986), 150 Ill. App. 3d 21, the plaintiff was an attorney employed by an insurance company. The plaintiff alleged that he was discharged because he refused to remove or destroy documents from his employer's files. These files were the subject of discovery requests made pursuant to a pending lawsuit. This court found public policy considerations to exist because the employer was requesting the employee to contravene supreme court rules and obstruct justice. Although we held that the tort of retaliatory discharge is not available to attorneys, we stated that, "Clearly, these matters 'strike at the heart of a citizen's social rights, duties, and responsibilities.' " *Herbster*, 150 Ill. App. 3d at 24, quoting *Palmateer*, 85 Ill. 2d at 130.

The only other situation recognized by Illinois courts to give rise to a retaliatory discharge claim is when an employee was discharged after refusing to work with an improperly functioning radioactive machine. *Wheeler v. Caterpillar Tractor Co.* (1985), 108 Ill. 2d 502.

In an attempt to restrict the tort of retaliatory discharge, Illinois courts have refused to find the existence of a clearly mandated public policy in a variety of settings. See, *e.g.*, *Barr v. Kelso-Burnett Co.* (1985), 106 Ill. 2d 520 (when discharged employee claimed violations of constitutional rights, clearly mandated public policy nonexistent because constitution restrains government, not private individuals); *Mein v. Masonite Corp.* (1985), 109 Ill. 2d 1 (clearly mandated public policy nonexistent when employee discharged due to age); *Price v. Carmack Datsun, Inc.* (1985), 109 Ill. 2d 65 (clearly mandated public policy nonexistent when employee discharged after filing a claim under an employer-provided health insurance plan); *Gould v. Campbell's Ambulance Service, Inc.* (1986), 111 Ill. 2d 54 (clearly mandated public policy nonexistent when employee was discharged after expressing a concern that a co-employer was not certified pursuant to city ordinance); *Dykstra v. Crestwood Bank* (1983), 117 Ill. App. 3d 821 (clearly mandated public policy nonexistent when employee discharged due to age); *Thomas v. Zamberletti* (1985), 134 Ill. App. 3d 387

944

(clearly mandated public policy nonexistent when employee discharged due to absenteeism necessary for treatment of injuries); *Cipov v. International Harvester Co.* (1985), 134 Ill. App. 3d 522 (clearly mandated public policy nonexistent when employee discharged for refusing to take a polygraph examination); *Zaniecki v. P.A. Bergner & Co.* (1986), 143 Ill. App. 3d 668 (clearly mandated public policy nonexistent when employee discharged after reporting suspected criminal activity of superior to company's chief security officer only and not to public officials) (but see *Johnson*, 147 Ill. App. 3d 746, and *Shores*, 164 Ill. App. 3d 503); *Free v. Holy Cross Hospital* (1985), 153 Ill. App. 3d 45 (clearly mandated public policy nonexistent when employee discharged for refusing to evict patient from hospital); *Hugo v. Tomaszewski* (1987), 155 Ill. App. 3d 906 (clearly mandated public policy nonexistent when employee discharged due to employer's breach of duty of good faith and fair dealing); *Buechele v. St. Mary's Hospital Decatur* (1987), 156 Ill. App. 3d 637 (clearly mandated public policy nonexistent when employee discharged for filing libel and slander suit against employer); *Abrams v. Echlin Corp.* (1988), 174 Ill. App. 3d 434 (clearly mandated public policy nonexistent when employee discharged for filing suit to collect monies due pursuant to employment agreement).

Lambert's complaint alleges that he was fired for failing "to give untrue information and/or testimony regarding" the workers' compensation claim filed by Mazza's widow. The policy considerations underlying *Herbster* apply in this case. An employee should not be forced to hinder the legal process by the threat of discharge. Lambert's complaint alleges that he was ordered to give untrue *testimony* regarding the Mazza case. If true, this would amount to the subornation of perjury. (See Ill. Rev. Stat. 1987, ch. 38, par. 32—3.) Requiring someone to commit a crime in order to remain employed clearly affects the citizens of the State collectively and strikes at the heart of a citizen's social rights, duties and responsibilities. We find that count I of plaintiff's complaint does state a cause of action for retaliatory discharge.

■ However, the facts adduced at trial do not support the allegations set forth in the complaint. Therefore, we find that the trial court erred in not granting defendant's motion for a judgment *n.o.v.* A motion for judgment *n.o.v.* should be granted in those cases in which all of the evidence, when viewed in the light most favorable to the nonmovant, so overwhelmingly favors the movant that no contrary verdict based on that evidence could ever stand. *Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 510.

■ The investigation into Mazza's suicide and resulting workers'

compensation claim was conducted by the City. It was an entirely internal investigation. This was not a legal process *per se*. Accepting Lambert's view that he was told to lie to the City's investigator and attorney, it appears that there is no clearly mandated public policy condemning this action. Lambert was simply told not to express his opinion that Mazza's suicide was work related to the investigators. This is not a case in which an employee is asked to commit perjury or to obstruct justice in any manner. Contrary to plaintiff's contention, Lambert is not being asked to "derail" the Mazza workers' compensation claim or hinder a legal process. Withholding the truth from the City does not affect anyone other than the City. This situation does not affect the citizens of the State collectively or strike at the heart of a citizen's social rights, duties, and responsibilities. Also, this is not a situation where an employee is exposing illegal or improper conduct such that the rationale behind the "whistle blowing" line of cases would apply.

A finding of a violation of clearly mandated public policy in this case would be an enormous expansion of the tort of retaliatory discharge. There is no precedent to support this expansion, and there are no public policy considerations that would warrant it. The evidence adduced at trial does not establish that Lambert's discharge was in contravention of a clearly mandated public policy. A necessary element of the tort of retaliatory discharge is wholly lacking, and, therefore, the judgment for plaintiff in this case cannot stand.

Due to our decision on the above issue, the evidentiary issues and question of damages need not be discussed.

The judgment of the circuit court of Lake County is reversed and the cause is remanded with instructions to enter judgment *non obstante veredicto* in favor of defendant.

Reversed and remanded.

JUSTICE NASH, specially concurring:
While the opinion reaches the correct result, it unnecessarily and at length undertakes a review of the cause of action of retaliatory discharge, a matter not challenged in this case. I express no opinion by my concurrence as to the correctness of the *dictum* which here considers the sufficiency of the complaint. I join in Justice Reinhard's special concurrence.

JUSTICE REINHARD, specially concurring:
The analysis portion of the opinion contains a lengthy discussion

on whether the complaint states a cause of action. The opinion concludes that it does. I am reluctant to concur in that part of the opinion because the issue of the sufficiency of the complaint was not raised as an issue on appeal by the appellant and the opinion has engaged in this unnecessary review *sua sponte*. While the sufficiency of a complaint may be challenged at any stage of the proceedings (see *Wimmer v. Koenigseder* (1985), 108 Ill. 2d 435, 439, 484 N.E.2d 1088; *Naiditch v. Shaf Home Builders, Inc.* (1987), 160 Ill. App. 3d 245, 258, 512 N.E.2d 1027), there is no occasion to discuss this question here as the issue is not raised. Other than for jurisdictional reasons, a reviewing court should not ordinarily search the record for unargued and unbriefed questions. I concur with the conclusion in the balance of the opinion that plaintiff's evidence did not establish a cause of action and that the trial judge erred in not granting the motion for judgment *n.o.v.*