**Gordon MAKRAY, Plaintiff,**

v.

**SARA LEE CORPORATION, Defendant.**

**No. 89 C 1478.**

United States District Court, N.D. Illinois, E.D.

Feb. 20, 1990.

Supplemental Memorandum Opinion & Order April 25, 1990.

---

Rick Allan White, Chicago, Ill., for plaintiff.

Gerald C. Peterson, Winston & Strawn, Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

ALESIA, District Judge.

In this action the plaintiff, Gordon Makray ("Makray"), alleges that the defendant, Sara Lee Corporation ("Sara Lee") wrongfully terminated Makray's employment on or about October 21, 1987. Makray originally filed an action in the Chancery Division of the Circuit Court of Cook County, Illinois on December 30, 1988. (88 CH 11922). Service on Sara Lee was obtained on January 26, 1989 and, on February 22, 1989, Sara Lee filed a Notice of Removal in this Court pursuant to 28 U.S.C. §§ 1441(a) and 1446. Makray's motion to remand this action to state court is now before the Court. For the reasons stated in this order, Makray's motion is deferred and the parties are directed to submit written evidence relating to the issue of the union's waiver of Makray's rights under the Illinois One Day Rest In Seven Act. Ill.Rev. Stat. ch. 48, ¶ 8a *et seq.* (1935).

### I. FACTS

Makray alleges that Sara Lee discharged him in retaliation for his exercise of his statutory right to "One Day Rest in Seven." Ill.Rev.Stat. ch. 48, ¶ 8a *et seq.* (1935). Makray further alleges that Sara Lee ordered him to work on October 18, 1987 and

that working on that date would have required Makray to work seven days in a row. Makray also alleges that Sara Lee terminated him for his failure to appear at work on that date.

Sara Lee argues that Makray's claim is preempted by Section 301 of the Labor Management Relations Act ("LMRA"). 29 U.S.C. § 185.[1] Sara Lee contends that Makray's dismissal was proper pursuant to the terms of an existing labor contract between Sara Lee and the International Association of Machinists and Aerospace Workers, AFL–CIO, District 8, the recognized collective bargaining unit for various Sara Lee employees, including Makray. Section 6(b) of Article XII of the collective bargaining agreement concerns the volunteering of union employees to work on what would otherwise be their days off. Sara Lee argues that although the collective bargaining agreement provision requires those employees who want to volunteer their days off to sign a list, it was the past practice of the union and Sara Lee to have union employees who did not want to be volunteered to work on their days off, sign a "No List". Sara Lee argues that because Makray did not sign the "No List", the past practice of the union and Sara Lee was to interpret the failure to sign the list as the employee's acquiescence in volunteering his days off. Pursuant to Sara Lee's reasoning, Makray could be ordered to work on October 18, 1987 and be validly terminated for his failure to appear under the collective bargaining agreement. Thus, Sara Lee argues, this dispute is governed by the collective bargaining agreement and therefore, any state cause of action is preempted by the LMRA, because the federal courts have original jurisdiction of labor disputes arising under the LMRA by virtue of 29 U.S.C. Section 185(a) of the LMRA.[2]

## II. DISCUSSION

Before addressing the preemption issue, we must determine whether this action was properly removed from the state court.

### A. Removal

■ There are two prerequisites for removal to a district court. First, the action must have been properly commenced in the state court. Second, the action must be one that could have originally been commenced in federal court. *People v. Kerr–McGee Chem. Corp.*, 677 F.2d 571 (7th Cir.1982); *Nuclear Engineering Co. v. Scott*, 660 F.2d 241 (7th Cir.1981), *cert. denied*, 455 U.S. 993, 102 S.Ct. 1622, 71 L.Ed.2d 855 (1982). We address each element in turn.

Although the parties have not raised any issue with respect to the first element of the removal analysis, the Court notes that whether Makray properly alleged a claim under Illinois law is an issue of first impression. The tort of retaliatory discharge has been narrowly construed by Illinois courts. A thorough history of the tort and the various Illinois decisions appears in *Lambert v. City of Lake Forest*, 186 Ill. App.3d 937, 134 Ill.Dec. 709, 542 N.E.2d 1216 (2d Dist.1989), *petition for leave to appeal granted*, 128 Ill.2d 664, 139 Ill.Dec. 514, 548 N.E.2d 1070 (1989). Illinois courts have recognized the tort only where it is alleged that the employer discharged the employee in retaliation for filing a workers' compensation claim or in anticipation of the worker's filing of a claim and in retaliation for "whistle blowing", i.e. reporting illegal conduct. *Lambert*, 134 Ill.Dec. at 712, 542 N.E.2d at 1219. Research reveals no Illinois decisions addressing facts similar to those alleged here, i.e. a discharge in retaliation for the exercise of rights under the One Day Rest in Seven Act.

---

1. Neither Makray's state court complaint nor Sara Lee's notice of removal reveals whether diversity of citizenship exists between the parties. Makray's complaint merely states that Makray is a citizen of the State of Illinois and Sara Lee is licensed to do business in Illinois. We assume for purposes of this motion that no diversity of citizenship exists.

2. Section 301 of the LMRA provides:
   (a) Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organization, may be brought in any district court of the United States having jurisdiction of the parties ... 29 U.S.C. § 185(a).

The elements of the tort under Illinois law are: "(1) that the employee was discharged in retaliation for the employee's activities; and (2) that the discharge is in contravention of a clearly mandated public policy." *Lambert*, 134 Ill.Dec. at 711, 542 N.E.2d at 1218. Makray's allegations are sufficient to meet the first element, but whether the termination of Makray's employment violated a clearly mandated public policy as required by the second element of the tort is less clear. Most attempts to expand the tort under Illinois law have failed to clear the hurdle presented by this second element, because of the strict construction given to the term "clearly mandated public policy". Thus, whether Makray's alleged discharge in violation of the One Day Rest In Seven Act contravened a clearly mandated public policy sufficient to state a claim for retaliatory discharge under Illinois law is an open question. Taking the analysis one step further, this Court must address the issue of whether the prerequisites for removal are met if the issue of whether the plaintiff states a claim under state law is one of first impression.

Research reveals no Seventh Circuit case law addressing this issue. The Fourth Circuit, however, analyzed a related issue in *Washington v. Union Carbide Corp.*, 870 F.2d 957 (4th Cir.1989). In *Union Carbide*, the employee brought an action in federal court raising the claim that he was discharged in retaliation for filing grievances reporting his employer's alleged safety violations under the collective bargaining agreement, as well as other claims alleged against both the union and the employer arising under the district court's subject matter jurisdiction. All of the claims were dismissed except the retaliatory discharge claim. The district court entered summary judgment in favor of the employer on the retaliatory discharge claim, basing its ruling on section 301 preemption and, or alternatively, "that there was no right of action premised on West Virginia public policy protecting [plaintiff] from discharge for filing safety complaints." *Union Carbide*, 870 F.2d at 959.

The question on appeal was which issue should be addressed first, the merits of the plaintiff's state law allegations or the preemption issue. The *Union Carbide* majority held that in some circumstances, it may be appropriate for the district court to address the merits of the state law claim prior to addressing the preemption issue and that the decision of the order in addressing the issues should be left to the discretion of the district court. *Id.* at 960. The *Union Carbide* dissent argued that it is never appropriate for the district court to address the merits of the state law claim prior to addressing the preemption issue. The majority and dissent agreed, however, that the proper course of action for the district court when presented with a state law claim of first impression, is to determine the preemption issue first.

> We do not discount the desirability of having state courts resolve questions of state law which are genuinely unsettled or which hinge upon disputed facts. In such cases, a federal district court should resolve the § 301 inquiry at the outset of the litigation. *Union Carbide*, 870 F.2d at 961 (majority opinion).

Unfortunately, the majority and dissent in that case could not agree on whether the claim alleged by the plaintiff raised any issues of unsettled law. The issue outlined above with respect to Makray's claim, i.e. whether the alleged discharge contravened any clearly mandated public policy under state law, was precisely the same issue raised by the plaintiff's claim in *Union Carbide*. The West Virginia state courts, like the Illinois state courts, had resisted efforts to expand the tort of retaliatory discharge. The majority position in *Union Carbide* was that a West Virginia court passing upon the issue of whether the plaintiff stated a claim for retaliatory discharge, arising out of his termination following his reports on Union Carbide's alleged safety violations, would again resist the effort to expand the tort. The dissent viewed the majority's opinion as nothing more than an "extensive effort to find state law (or non-law) on the subject" ... *Union Carbide*, 870 F.2d at 967.

The *Union Carbide* dissent found support for the proposition that the district

court should not address the merits of the state court claim in the decisions of three other circuit courts. In *Jackson v. Liquid Carbonic Corp.*, 863 F.2d 111 (1st Cir. 1988), the First Circuit held that it should not be assumed that the plaintiff stated a claim under state law, for purposes of removal analysis, in challenging an employee drug testing program. The court explored state decisions upholding the right to privacy and determined that although no state decision existed holding that a drug testing program violated that right, it was likely that the state courts would recognize the plaintiff's claim, but that any decision on the merits of that claim would require interpretation of the collective bargaining agreement. Therefore, any claim the plaintiff might have under state law, was preempted by federal law. The *Jackson* dissent, however, had the following to say:

> The majority has, in my judgment, erred in two respects: (i) in declaring on its own that [state law] encompasses a privacy right which is limited by the reasonableness of the employer's random drug testing program without first permitting the [state's] courts to interpret the parameters of its own laws, and *effectively foreclosing such a state determination by declaring the issue preempted;* and (ii) in declaring that once the [state law] is so construed, interpretation of the [collective bargaining agreement] is required to determine the reasonableness of the random drug testing. *Jackson*, 863 F.2d at 124 (emphasis supplied).

The dissent's summary of the majority opinion succinctly demonstrates the consequences of addressing the merits of the state law claim before addressing the preemption issue.

In *United Ass'n of Journeymen and Apprentices of the Plumbing and Pipe Fitting Industry Local No. 57 v. Bechtel Power Corp.*, 834 F.2d 884 (10th Cir.1987), the Tenth Circuit simply held that any cause of action for blacklisting would be derived from the state statute alleged to be violated and that therefore, the claim was not preempted under section 301. Finally, in *Laws v. Calmat*, 852 F.2d 430 (9th Cir. 1988), the plaintiff also alleged that the employer's drug testing program violated the employees' right to privacy and the Ninth Circuit determined that the state law claim had not yet been addressed by the state court. The Ninth Circuit simply held that the absence of state law on the subject required the conclusion that section 301 preempted the alleged state law claim.

■ This case presents different considerations from both the *Union Carbide* decision and the other decisions outlined above. While the Illinois state courts have considered and rejected many attempts to expand the tort of retaliatory discharge, in more recent years, the tort has become difficult to define. The summary of Illinois decisions set forth in *Lambert v. City of Lake Forest*, 186 Ill.App.3d 937, 134 Ill. Dec. 709, 712–14, 542 N.E.2d 1216, 1219–21 (2d Dist.1989), amply supports that proposition. *See also Villegas v. Princeton Farms, Incorporated*, 893 F.2d 919 (7th Cir.1990) (recognizing the unsettled nature of the tort of retaliatory discharge under Illinois law). Moreover, in *Lambert*, the Illinois Supreme Court recently granted the plaintiff's petition for leave to appeal and thus, a decision from the state's highest court is forthcoming. *Lambert v. City of Lake Forest*, 128 Ill.2d 664, 139 Ill.Dec. 514, 548 N.E.2d 1070 *petition for leave to appeal granted* (1989). This Court's hypothesis on how an Illinois court would view this issue, which may be determined shortly by the Illinois Supreme Court, is inappropriate. Unlike the plaintiffs' claims in *Laws* and *Jackson*, Makray's claim arises under a well-developed, albeit unsettled, area of state law. The issues raised by Makray's claim are best left to the state courts, which have already recognized the cause of action generally. Moreover, the curious posture of the preemption issue in this case, which will be more fully explored below, weighs against addressing the merits of the state law claim. These considerations lead this Court to assume that Makray states a claim under Illinois law for purposes of the first prong of this Court's removal analysis.

## B. Preemption

■ Turning to the second prong of the removal analysis, Makray and Sara Lee disagree as to whether Makray's action originally could have been commenced in federal court. That issue turns on whether Makray's state claim for retaliatory discharge is preempted by Section 301 of the LMRA, thereby establishing the original jurisdiction of this court. The Supreme Court in *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 108 S.Ct. 1877, 100 L.Ed.2d 410 (1988), held that "an application of state law is preempted by § 301 of the Labor Management Relations Act of 1947 only if such application requires the interpretation of a collective bargaining agreement." The policy goal in requiring preemption of state law claims by section 301 of the LMRA is to provide consistent contract interpretation under federal law and reduce the chance "that individual contract terms might have different meanings under state and federal law." *Local 174, Teamsters v. Lucas Flour Co.*, 369 U.S. 95, 103, 82 S.Ct. 571, 577, 7 L.Ed.2d 593 (1962). Those policy considerations, however, do not prevent the various states from providing workers with other substantive, state-created, legal rights independent of the collective bargaining relationship. *Allis–Chalmers Corp. v. Lueck*, 471 U.S. 202, 212, 105 S.Ct. 1904, 1911, 85 L.Ed.2d 206 (1985). Thus, the *Lingle* Court held that "so long as the state law claim can be resolved without interpretation of the agreement itself, the claim is 'independent' of the agreement for purposes of section 301." *Lingle*, 108 S.Ct. at 1883.

The Seventh Circuit applied the law established in *Lingle* in the recent case of *Bettis v. Oscar Mayer Foods Corp.*, 878 F.2d 192 (7th Cir.1989). In *Bettis*, as in *Lingle* and the instant case, the state law cause of action alleged was a retaliatory discharge theory. The *Bettis* court held that *Lingle* requires an examination of the elements of the state law tort and a determination of whether resolution of the state law claim requires an interpretation of the collective bargaining agreement. *Id.* at 196. "[T]o show retaliatory discharge, [the employee] must set forth sufficient facts from which it can be inferred that (1) he was discharged or threatened with discharge and (2) [the employer's] motive in discharging or threatening to discharge him was to deter him from exercising his rights under the Act or to interfere with his exercise of those rights." *Id.* at 196; *citing Lingle*, 108 S.Ct. at 1882.

■ Makray satisfies those elements by alleging that he was discharged for exercising his rights under the One Day Rest In Seven Act. Ill.Rev.Stat. ch. 48, ¶ 8a *et seq.* (1935). As discussed above, research reveals no Illinois cases holding that an employer's termination of an employee's employment for his exercise of rights under the One Day Rest In Seven Act is a retaliatory discharge. For the reasons set forth above, this Court will not predict whether an Illinois court would allow such a cause of action. Makray alleges a discharge in retaliation for the exercise of his rights established by an Illinois statute and those allegations satisfy this court's inquiry into whether Makray states a claim under Illinois law.

## C. Waiver

Our inquiry is not complete, however, even though Makray alleges a claim for retaliatory discharge, which precedent establishes is not preempted by Section 301. The *Lingle* Court's holding was limited to those cases in which the employee alleges the tort of retaliatory discharge and the employer claims that the collective bargaining agreement justifies its decision to terminate the employee. The instant case presents a slightly different issue from *Lingle*. Sara Lee contends not only that the collective bargaining agreement justified its actions, but also that Makray's discharge was proper because, pursuant to the union's prior practice and interpretation of the collective bargaining agreement, Makray's failure to sign the "No List" constituted a waiver of the protection of the One Day Rest In Seven Act. The *Lingle* Court expressly reserved decision of the issue presented by Sara Lee, that the union waived the same right on behalf of

Makray, that Makray now asserts as the basis of his retaliatory discharge claim:

> Whether a union may *waive* its members' individual, nonpre-empted state-law rights, is, likewise, a question distinct from that of whether a claim is pre-empted under § 301, and is another issue we need not resolve today. We note that under Illinois law, the parties to a collective bargaining agreement may not waive the prohibition against retaliatory discharge ... (citations omitted). Before deciding whether such a state law bar to waiver could be pre-empted under federal law by the parties to a collective bargaining agreement, we would require "clear and unmistakable" evidence, *see Metropolitan Edison Co. v. NLRB*, 460 U.S. 693, 708 [103 S.Ct. 1467, 1477, 75 L.Ed.2d 387] (1983), in order to conclude that such a waiver had been intended ... *Lingle*, 108 S.Ct. at 1883, n. 9.

If the union validly waived Makray's right to the protection of the One Day Rest In Seven Act, then Makray does not have a claim for retaliatory discharge and may not state one under the facts alleged. The issue of waiver, however, is not one to be determined by the state court, but rather falls within this court's original jurisdiction. That is because, as noted by the Seventh Circuit, the state court "[may] simply determine whether such a motive exists—not whether, as a matter of law, the collective bargaining agreement justifies such a motive." *Pantoja v. Texas Gas and Transmission Corporation*, 890 F.2d 955, 960 n. 3 (7th Cir.1989) (citation omitted); *see also Douglas v. American Information Technologies Corporation*, 877 F.2d 565, 572–74 (7th Cir.1989) (requirement of court examination and interpretation of collective bargaining agreement mandates preemption).

Therefore, the *Lingle* Court's footnote leads this court to conclude that any decision with respect to Makray's motion to remand must be deferred, pending the parties' submission of evidence relevant to the issue of waiver of Makray's right to the protection of the One Day Rest In Seven Act.

## III.  CONCLUSION

This court's decision with respect to Makray's motion to remand is deferred, pending the parties' submission of evidence. Both parties shall file written evidence relevant to the issue of waiver simultaneously on the date provided in this Court's minute order of the same date as this opinion.

## SUPPLEMENTAL MEMORANDUM OPINION AND ORDER

■ On February 20, 1990, this Court issued a memorandum opinion and order with respect to plaintiff Gordon Makray's ("Makray") motion to remand this case to the Circuit Court of Cook County. The opinion concluded that the Court could not determine the motion to remand until the parties submitted evidence relating to the controverted issue of whether the union waived its members' rights under the Illinois One Day Rest In Seven Act. Ill.Rev. Stat. ch. 48, ¶ 8a et seq. (1935). This Court determined in that prior opinion that if the union waived Makray's rights under that law, then the Court would have to determine if that waiver under federal law would require preemption of Illinois law. Conversely, if the union did not waive Makray's rights under the statute, then the Court would grant the motion to remand. Makray's motion to remand is granted, because the evidence submitted is not "clear and unmistakable" that the union waived Makray's rights under the Illinois statute.

First, the contract itself, in which the union is alleged to have waived Makray's rights, is ambiguous with respect to the issue presented. The contract provides as follows for the distribution of overtime work:

> For an overtime day on which less than all maintenance crews are scheduled to work, the company will assign the work to be done to employees from among those who have signed up committing themselves for twelve (12) month periods to be regularly available for this type of overtime day (predominantly Sunday shifts).... Employees not signed up and not scheduled shall be excused with-

out penalty but sacrifice any claim to such work. However, if an occasion arises when the sign-up employees are insufficient to perform the work to be done to assure plant operation, the least senior other employee(s) who have exhibited the ability to perform the work to be done shall be assigned and obligated to work, reaching up the seniority list to supplement the crew(s) as far as is necessary to assure that an adequate number of employees will be on hand to accomplish the work to be done ...

(Collective Bargaining Agreement, Article XII, § 6(b), p. 15). The contract is ambiguous as to the issue, because it addresses overtime work generally and it is possible for Sara Lee to comply with both the contract and the Illinois statute. The statute simply requires the employer to allow every employee, with certain exceptions, at least twenty-four consecutive hours of rest in every week. Ill.Rev.Stat. ch. 48, ¶ 8b (1935). Article XII of the collective bargaining agreement defines the hours of work and establishes a seven day, forty hour work week, consisting of five shifts of eight hours per shift. An employee, such as Makray, could be required to work more than the five shifts of eight hours in a seven day period, pursuant to Article XII, section 6(b), without the employer running afoul of the statute. The collective bargaining agreement is silent as to the issue of whether the employer may require employees to work so much overtime that the employees are not allowed the twenty-four consecutive hours of rest required by the statute.

Moreover, the affidavits submitted by the parties do nothing more than establish that the union has taken contradictory positions. While the union and employer now agree that the union waived the employees' rights under the statute to obtain other concessions from the employer during collective bargaining, the union did not take that position at the time the grievance was filed. During the grievance procedure, the union maintained that the company had violated both the collective bargaining agreement and the statute. The evidence does not approach the standard of clear

and unmistakable waiver of Makray's statutory right. *Metropolitan Edison Co. v. NLRB*, 460 U.S. 693, 103 S.Ct. 1467, 75 L.Ed.2d 387 (1983). Therefore, Makray's claim is not preempted by federal labor law and the Court grants the motion to remand to the Circuit Court of Cook County.