**Anthony PRINCE, Plaintiff-Appellant,**

**v.**

**RESCORP REALTY, an Illinois Corporation, Defendant-Appellee.**

**No. 90-3082.**

United States Court of Appeals, Seventh Circuit.

Argued Feb. 26, 1991.

Decided Aug. 23, 1991.

Rehearing and Rehearing En Banc Denied Oct. 29, 1991.

---

Jennifer P. Sodaro (argued), Chicago, for plaintiff-appellant.

Steven H. Adelman (argued), Judith L. Gallo, Faith L. Kalman, Keck, Mahin & Cate, Chicago, for defendant-appellee.

Before FLAUM, RIPPLE and MANION, Circuit Judges.

RIPPLE, Circuit Judge.

An employee sued his employer for retaliatory discharge. The district court dismissed the action on the ground that the employee's discharge did not contravene a clearly mandated public policy, an essential element to any retaliatory discharge claim under the law of Illinois. For the following reasons, we reverse the judgment of the district court.

## I

## BACKGROUND

Rescorp Realty (Rescorp) employed Anthony Prince as chief engineer for one of its properties, a high rise apartment building located in Oak Park, Illinois. After returning from vacation, Mr. Prince discovered that the management had installed a timing mechanism on the building's fire safety system. The system pressurized the air in the corridors of the building so as to confine a potential fire to its origin and prevent it from spreading. The newly installed timer turned off the system from late evening until early morning. Mr. Prince believed that use of this timer breached agreements between the building developer and the Village of Oak Park and constituted a fire hazard. He expressed his concern to the building manager, and, after receiving little or no response, contacted Oak Park officials directly. As a result, the officials directed Rescorp to remove the timer. Approximately two years later, Rescorp fired Mr. Prince.[1]

Mr. Prince filed a two-count complaint against Rescorp in the Circuit Court of Cook County, Illinois. Count I asserted a state claim for retaliatory discharge. Mr. Prince contended that he was terminated in retaliation for reporting a violation of the Oak Park Building Code. Count II alleged breach of a collective bargaining agreement. Rescorp removed the action to federal court based on Count II—a federal question under section 301 of the Labor Management Relation Act—and the district court invoked the doctrine of pendent jurisdiction over the state claim. *See United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). Once in federal court, Rescorp moved to dismiss both counts for failure to state a claim upon which relief can be granted. *See* Fed.R.Civ.P. 12(b)(6). The district court granted the motion on both counts, but also granted Mr. Prince's motion to amend his complaint. In his amended complaint, Mr. Prince repled the state retaliatory discharge claim, but chose not to pursue the federal claim.[2] Thereafter, the district court granted Rescorp's motion to dismiss the amended complaint.

1. Prince alleges that during this time management filed some 20 grievances against him as a result of his actions in an attempt to terminate his employment.

2. During oral argument, the court inquired of counsel whether, under the circumstances here, the district court had jurisdiction to consider the first amended complaint. We conclude that there is no jurisdictional defect. "[F]ederal courts base decisions about subject matter jurisdiction after removal on the plaintiff's complaint *as it existed at the time that the defendant*

*filed the removal petition." Kidd v. Southwest Airlines, Co.*, 891 F.2d 540, 546 (5th Cir.1990) (emphasis supplied); *see Price v. Highland Community Bank*, 722 F.Supp. 454, 456 (N.D.Ill. 1989) (Posner, J., sitting by designation) (plaintiff's dropping the sole federal claim in removed case "did not affect federal jurisdiction, which with immaterial exceptions depends on the facts and claims when the suit is removed, rather than on subsequent developments"). Indeed, in *Hammond v. Terminal Railroad Association*, 848 F.2d 95 (7th Cir.1988), we observed:

The court had dismissed the retaliatory discharge claim in the original complaint because the Oak Park Building Code "failed to evince a clearly mandated public policy" affecting "citizens of the state collectively," a requisite to any retaliatory discharge claim in Illinois. Tr. of May 29, 1990 at 4. The court reached this conclusion based on the "absence of statewide policy embodying the concerns of the Oak Park Building Code" and the Illinois Supreme Court's "repeated warnings against expansion of the retaliatory discharge tort." *Id.* As for the amended complaint, the district court noted that it attempted to remedy the inadequacy of the original complaint by alleging that the State Fire Marshal Act, Ill.Rev.Stat., ch. 127½, paras. 9, 14, enunciates a clearly mandated public policy affecting the state's citizens. The district court rejected this argument, however, because that Act "merely imposes a duty upon the Department of Law Enforcement to issue fire prevention regulations" and does not itself establish any regulations. Tr. of Aug. 21, 1990 at 4. Mr. Prince now appeals the dismissal of his amended complaint.

## II
## ANALYSIS

### A. *Standard of Review*

The district court granted Rescorp's motion to dismiss the amended complaint for failure to state a claim upon which relief can be granted. We review the grant of a motion to dismiss *de novo*. *Villegas v. Princeton Farms, Inc.*, 893 F.2d 919, 924 (7th Cir.1990); *Corcoran v. Chicago Park Dist.*, 875 F.2d 609, 611 (7th Cir.1989). It is well settled that, when reviewing the grant of a motion to dismiss, we must assume the truth of all well-pleaded factual allegations and make all possible inferences in favor of the plaintiff. *Janowsky v. United States*, 913 F.2d 393, 395 (7th Cir.1990); *Rogers v. United States*, 902 F.2d 1268, 1269 (7th Cir.1990). A complaint should not be dismissed "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957).

### B. *Merits*

The pendent state claim is a tort action governed by Illinois law. Thus, we look to Illinois law to determine whether Mr. Prince has pled a cognizable retaliatory discharge claim. *See Belline v. K–Mart Corp.*, 940 F.2d 184, 185 (7th Cir.1991); *see also Barnes v. Callaghan & Co.*, 559 F.2d 1102, 1105 & n. 4 (7th Cir.1977); *Woodmen of World Life Ins. Soc. v. Great Atl. & Pac. Tea Co.*, 561 F.Supp. 640, 641–42

The defendant's right to remove a case from state to federal court depends on the complaint filed by the plaintiff in state court. If that complaint states a claim that is removable ... removal is not defeated by the fact that, after the case is removed, the plaintiff files a new complaint, deleting the federal claim or stating a claim that is not removable. *Id.* at 97. Under this principle, subject matter jurisdiction would exist because, at the time Rescorp petitioned for removal, Prince had not yet amended his complaint and the federal claim was still alive. Judge Aspen has explained the policy considerations behind this principle.

When a plaintiff chooses a state forum, yet also elects to press federal claims, he runs the risk of removal. A federal forum for federal claims is certainly a defendant's right. If a state forum is more important to the plaintiff than his federal claims, he should have to make that assessment before the case is jockeyed from state court to federal court and

back to state court. The jockeying is a drain on the resources of the state judiciary, the federal judiciary and the parties involved; tactical manipulation [by the] plaintiff ... cannot be condoned.

*Austwick v. Board of Educ.*, 555 F.Supp. 840, 842 (N.D.Ill.1983).

This rule is usually invoked when, after removal by a defendant, the plaintiff *voluntarily* amends his complaint to eliminate the federal claim upon which removal was based. *See Boelens v. Redmen Homes*, 759 F.2d 504, 507 (7th Cir.1985). However, we believe that a pragmatic approach to jurisdiction, *cf. Newman–Green v. Alfonzo–Larrain*, 490 U.S. 826, 837, 109 S.Ct. 2218, 2225–26, 104 L.Ed.2d 893 (1989), requires the same result here. The federal count was dismissed for failure to exhaust remedies, and the plaintiff, at that point, apparently abandoned the federal claim and elected to proceed with the state claim. Consequently, the same concerns of judicial economy and tactical manipulation are present here.

(N.D.Ill.1982). The Supreme Court of Illinois first recognized the tort of retaliatory discharge in *Kelsay v. Motorola, Inc.*, 74 Ill.2d 172, 23 Ill.Dec. 559, 384 N.E.2d 353 (1978). Post-*Kelsay* decisions have narrowly construed the tort and restricted its expansion, *see Barr v. Kelso–Burnett Co.*, 106 Ill.2d 520, 88 Ill.Dec. 628, 630, 478 N.E.2d 1354, 1356 (1985); *Lambert v. City of Lake Forest*, 186 Ill.App.3d 937, 134 Ill.Dec. 709, 711, 542 N.E.2d 1216, 1218 (1989), *app. granted*, 128 Ill.2d 664, 139 Ill.Dec. 514, 548 N.E.2d 1070 (1990). This court recently has recognized this approach of the Illinois courts, *see Villegas v. Princeton Farms, Inc.*, 893 F.2d 919, 925 (7th Cir.1990),[3] and we shall not circumvent these state decisions by expanding the cause of action. *See id.* We have the duty to make an independent assessment[4] as to whether the Supreme Court of Illinois would recognize such a cause of action on the facts set forth in the first amended complaint.

■ Under Illinois law, an employee must demonstrate two elements to establish a cause of action for retaliatory discharge: "(1) that the employee was discharged in retaliation for the employee's activities; and (2) that the discharge is in contravention of a clearly mandated public policy." *Lambert*, 134 Ill.Dec. at 711, 542 N.E.2d at 1218. Rescorp contends that both elements are missing.

■ As to the first element, Rescorp argues that Mr. Prince "failed to specifically allege that his discharge was causally related to his reporting of a claimed violation of the Oak Park Building Code." Appellee's Br. at 6 n. 1. The district court did not address this element directly. Rescorp is technically correct: Mr. Prince's complaint does not specifically allege a casual connection between his termination and his notifying Oak Park officials. Such an explicit statement, however, is not required. *See Bragado v. Cherry Elec. Prod. Corp.*,

191 Ill.App.3d 136, 138 Ill.Dec. 476, 478–79, 547 N.E.2d 643, 645–46 (1989). Mr. Prince's amended complaint "spell[s] out the course of events which led to [his] discharge" and indicates that he faithfully performed all conditions of his employment and did not breach any duties owed to Rescorp. *Id.* at 645. Thus, we are convinced that a "fair reading of the complaint" informs Rescorp that Mr. Prince's discharge was triggered when he reported the Oak Park Building Code violation. *Id.* 138 Ill.Dec. at 478–79, 547 N.E.2d at 645–46.

■ The second element is the principal focus of this appeal. The district court dismissed the retaliatory discharge claim in both the original and amended complaints because, in its view, Mr. Prince's termination was not in contravention of a clearly mandated public policy. The court thus rejected Mr. Prince's argument that his termination violated clear public policy mandates embodied in both the Oak Park Building Code and the State Fire Marshal Act.

The district court was not faced with an easy task. Determining what is clearly mandated public policy is difficult; indeed, the concept "has been called the Achilles heel of the principle underlying the tort of retaliatory discharge." *Hicks v. Resolution Trust Corp.*, 736 F.Supp. 812, 815 (N.D.Ill.1990). However, on the precise application before us, we are aided significantly by several Illinois decisions. In *Palmateer v. International Harvester Co.*, 85 Ill.2d 124, 52 Ill.Dec. 13, 421 N.E.2d 876 (1981), the Illinois Supreme Court recognized a cause of action for retaliatory discharge when an employee was discharged for informing officials of possible criminal activity of a co-employee and agreeing to assist in the investigation. The *Palmateer* court acknowledged that "there is no precise definition" of clearly mandated public policy, but generally,

---

**3.** *But see Fowler v. Great Am. Ins. Cos.*, 653 F.Supp. 692, 696 (N.D.Ill.1987) ("This court does not discern from its review of the Illinois decisions a clear trend toward expansion or limitation of the retaliatory discharge tort.").

**4.** *See Salve Regina College v. Russell*, —— U.S. ——, 111 S.Ct. 1217, 1224, 113 L.Ed.2d 190 (1991).

it can be said that public policy concerns what is right and just and what affects the citizens of the State collectively. It is to be found in the State's constitution and statutes and, when they are silent, in its judicial decisions.... [A] matter must strike at the heart of a citizen's social rights, duties, and responsibilities before the tort will be allowed.

....

The cause of action is allowed where the public policy is clear, but is denied where it is equally clear that only private interests are at stake.

*Id.* 52 Ill.Dec. at 15–16, 421 N.E.2d at 878–79; *see Zientara v. Long Creek Township,* 211 Ill.App.3d 226, 155 Ill.Dec. 688, 693–94, 569 N.E.2d 1299, 1304–05, 1307 (1991). Another Illinois decision, *Lambert,* synthesized retaliatory discharge cases and provides helpful insights. The *Lambert* court concluded that the action is permitted in only two circumstances. The first, inapplicable here, is when an employee is discharged for filing a worker's compensation claim. The second is when "an employee is discharged for reporting illegal or improper conduct, sometimes referred to as 'whistle blowing.'" *Lambert,* 134 Ill.Dec. at 712, 542 N.E.2d at 1219; *see Layne v. Builders Plumbing Supply Co.,* 210 Ill.App.3d 966, 155 Ill.Dec. 493, 499, 569 N.E.2d 1104, 1110 (1991).[5]

To support his claim, Mr. Prince proffers, in part, the State Fire Marshal Act as evidence of the necessary public policy. Paragraph 9 of the Act provides:

No person, being the owner, occupant or lessee of any building or other structure which is so occupied or so situated as to endanger persons or property, shall permit such building or structure by reason of faulty construction, age, lack of proper repair, or any other cause *to become especially liable to fire,* or to become liable to cause injury or damage by collapsing or otherwise. No person, being the owner, occupant or lessee of any building, or structure, shall keep or maintain ... combustible or explosive material or inflammable conditions, which endanger the safety of said buildings or premises.

The Office of the State Fire Marshal *shall* adopt and promulgate such reasonable rules as may be necessary to *protect the public from the dangers specified in the preceding paragraph.* Such rules *shall* require the installation, inspection or maintenance of necessary *fire extinguishers, fire suppression systems, chemical fire suppression systems and fire alarm and protection devices....*[6]

---

**5.** The *Lambert* court also identified examples of cases when whistle blowers stated a cause of action as a result of being discharged for: reporting possible criminal activity and cooperating with officials, *Palmateer,* 85 Ill.2d 124, 52 Ill.Dec. 13, 421 N.E.2d 876; providing information to a state agency concerning patient care furnished by the employer/hospital, *Witt v. Forest Hosp., Inc.,* 115 Ill.App.3d 481, 71 Ill.Dec. 123, 450 N.E.2d 811 (1983); cooperating in a criminal investigation of the employer, *Bartley v. University Asphalt Co.,* 129 Ill.App.3d 231, 84 Ill.Dec. 539, 472 N.E.2d 499 (1984), *rev'd on other grounds,* 111 Ill.2d 318, 95 Ill.Dec. 503, 489 N.E.2d 1367 (1986); alerting the employee's supervisors about the employer's dubious accounting procedures, which the employee believed violated federal law, *Johnson v. World Color Press, Inc.,* 147 Ill.App.3d 746, 101 Ill.Dec. 251, 498 N.E.2d 575 (1986); reporting to the employee's supervisor that a nurse was not performing her duties correctly, *Shores v. Senior Manor Nursing Center, Inc.,* 164 Ill.App.3d 503, 115 Ill.Dec. 946, 518 N.E.2d 471 (1988). Moreover, the *Lambert* court indicated that an employee who was discharged for refusing to give untrue testimony stated a cause of action for retaliatory discharge. *See Lambert,* 134 Ill.Dec. at 714, 542 N.E.2d at 1221.

Furthermore, in *Fowler v. Great American Insurance Cos.,* 653 F.Supp. 692 (N.D.Ill.1987), the court discussed three categories of employee conduct that help effectuate public policy: (1) "assisting the state in carrying out its policies. Commonly referred to as 'whistle blowing'"; (2) "refusing to engage in conduct requested by the employer which violates public policy"; and (3) engaging "in conduct which is consistent with public policy, but which contravenes the expressed wishes of the employer." *Id.* at 697. Prince's conduct falls under the first category and thus deserves the "greatest protection" because it bears "the most direct relationship to public policy." *Id.*

**6.** Prince quotes an earlier version of this paragraph. However, at the time the district court ruled, this paragraph had been amended to read as we have quoted. *See* Ill.Ann.Stat. ch. 127½, para. 9 (Historical and Statutory Notes) (Smith-Hurd 1991).

All local officers charged with the duty of investigating fires shall enforce such rules, under the direction of the Office of the State Fire Marshal, except in those localities which have adopted fire prevention and safety standards *equal to or higher* than such rules adopted by the Office of the State Fire Marshal.

The Office of the State Fire Marshal, and the officers of cities, villages, towns and fire protection districts by this Act, charged with the duty of investigating fire, *shall,* under the direction of the Office of the State Fire Marshal, inspect and examine at reasonable hours, any premises, and the buildings and other structures thereon, and if, such dangerous condition or fire hazard is found to exist contrary to the rules herein referred to, or if a dangerous condition or fire hazard is found to exist as specified in the first paragraph of this Section, and the rules herein referred to are not applicable to such dangerous condition or fire hazard, *shall* order the dangerous condition removed or remedied, and shall notify the owner, occupant or other person interested in the premises.

Ill.Ann.Stat. ch. 127½, para. 9 (Smith–Hurd 1991) (emphasis supplied).

We believe the above paragraph creates a substantive and clearly mandated public policy with respect to fire prevention sys-

tems and that such a policy is sufficient to support a retaliatory discharge claim. The Act *requires* the State Fire Marshal to adopt rules to protect the State's citizens from fire hazards. It further *mandates* the installation of fire suppression and alarm systems in specified buildings and structures throughout the state. Local officers are charged with enforcement of the rules promulgated by the State Fire Marshal unless they can demonstrate that their local standards equal or exceed the state rules. Finally, the Act confers upon the State Fire Marshal and local officials concurrent jurisdiction to inspect buildings and require that an unsafe condition be removed or remedied. We conclude, therefore, that the Act embodies a clearly mandated public policy.[7]

We cannot accept Rescorp's suggestion that this state statute merely constitutes "enabling legislation" such as that involved in *Gould v. Campbell's Ambulance Service, Inc.,* 111 Ill.2d 54, 94 Ill.Dec. 746, 747, 488 N.E.2d 993, 994 (1986), and thus does not embody a substantive state policy. Whatever label is placed on the statute and however the state has chosen to enforce it, its terms set forth clearly a state public policy on the responsibility of landowners to keep their premises protected from the threat of fire.[8]

---

**7.** The Illinois Supreme Court's recent decision in *Fellhauer v. Geneva,* 142 Ill.2d 495, 154 Ill. Dec. 649, 568 N.E.2d 870 (1991), does not weigh against our conclusion. In *Fellhauer,* the court refused to recognize a retaliatory discharge claim when a mayor discharged a city employee for protesting the delay of a favorable public contract. The court reasoned that the retaliatory discharge claim was outweighed by the mayor's absolute discretion under municipal code to discharge appointed officers "whenever the mayor believed that discharge is in the municipality's best interest." *Id.* 154 Ill.Dec. at 655, 568 N.E.2d at 876. In the present case Rescorp enjoyed no such discretion. In fact, state law mandated that fire suppression systems be installed and maintained.

**8.** Indeed, in *Palmateer,* the court observed that "[n]o specific constitutional or statutory provision requires a citizen to take an active part in the ferreting out and prosecution of crime, but public policy nevertheless favors citizen crimefighters." 52 Ill.Dec. at 17, 421 N.E.2d at 880. An employee cannot establish a retaliatory dis-

charge claim by merely alleging that the employer violated provisions of a state statute, *see Barr v. Kelso–Burnett Co.,* 106 Ill.2d 520, 88 Ill.Dec. 628, 631, 478 N.E.2d 1354, 1357 (1985); *Fowler v. Great Am. Ins. Cos.,* 653 F.Supp. 692, 694 (N.D.Ill.1987); correspondingly, a claim cannot be defeated by the plaintiff's failure to point to any specific statutory provision violated by the employer.

Rescorp's reliance on *Magnotti v. Hughes,* 57 Ill.App.3d 1000, 15 Ill.Dec. 455, 373 N.E.2d 801 (1978), is misplaced. In *Magnotti,* the parents of a child who died in a plywood vacation cabin when it caught fire sued the landlord for negligent breach of a statutory duty. The parents contended that the duty was contained in the language of Ill.Ann.Stat. ch. 127½, para. 9, that no owner shall permit any building "to become especially liable to fire." The court held that the language did not create a duty because there was no evidence of any rules violated or even promulgated under the statute. The court concluded: "In the absence of such rules we do not believe that a cause of action can be predicated

Mr. Prince alleged that he was fired after reporting to Oak Park officials that Rescorp's management had rendered inoperative during the night hours a fire suppression system in a high rise apartment building where he was employed. Because at this point we must accept these allegations as true, Mr. Prince's firing would contravene the clearly mandated public policy expressed in the State Fire Marshal Act. "There is no public policy more important or more fundamental than the one favoring the effective protection of the lives and property of citizens." *Palmateer*, 52 Ill.Dec. at 16, 421 N.E.2d at 879. Moreover, in *Palmateer*, the court indicated that public policy favored citizen-crime fighters in exposing crime. "Public policy favors [the employee's] conduct in volunteering information to the law-enforcement agency." *Id.* 52 Ill.Dec. at 17, 421 N.E.2d at 880.[9]

Mr. Prince's allegations and the policy expressed in the State Fire Marshal Act concern public safety and protection. We are convinced that the courts of Illinois would not look the other way when an employer discharges an employee for reporting to public authorities [10] potential fire hazard at his place of employment. Rather, they would conclude that such conduct, *if proven*, seriously contravenes the clearly mandated public policy of protecting the citizens of the state from fire hazards as evinced by the State Fire Marshal Act, which requires owners of buildings properly to install, inspect, and maintain "necessary fire extinguishers, fire suppression systems, chemical fire suppression systems and fire alarm and protection devices." Ill. Ann.Stat. ch. 127½, para. 9 (Smith–Hurd 1991).

## CONCLUSION

For the foregoing reasons, the judgment of the district court must be reversed.

REVERSED.

upon such a general and undefined standard as *becoming especially liable to fire.*" 15 Ill.Dec. at 459, 373 N.E.2d at 805. The issue in this case, however, is not whether the Fire Marshal Act, standing alone, creates a private cause of action. The issue is whether the Act expresses a substantive public policy of Illinois. Furthermore, contrary to the facts in *Magnotti,* there is an allegation in this case that Oak Park enacted fire safety regulations. Moreover, an agreement was struck between Oak Park and Rescorp's management as to the fire prevention system at issue as a result of the State Fire Marshal Act. The existence of these regulations and agreement is evident from a November 11, 1987 letter from Lieutenant Kenneth Wiese, of the Fire Prevention Bureau of the Oak Park Fire Department, to Rescorp's site manager, Greg Sims. Lieutenant Wiese's letter instructs Mr. Sims to immediately remove the timer device. It further informs him that the fan fire suppression system was installed in the apartment building pursuant to an agreement between Oak Park and the building designers and developers and in lieu of the fire ventilation system required by the Oak Park Building Code. *See* R. 1 Ex. 2.

Rescorp also maintains that "Prince is unable to cite to any state rules or regulations requiring the type of ventilation system required by the Village of Oak Park." However, "the test for determining if the complaint states a valid cause of action is whether the public policy clearly mandated by the cited provisions is violated by the plaintiff's discharge." *Barr v. Kelso–Burnett Co.,* 106 Ill.2d 520, 88 Ill.Dec. 628, 631, 478 N.E.2d 1354, 1357 (1985). It is the *public policy* underlying the statutory or constitutional provision that must be violated, not the specific mandate of the provision. "It is only employee conduct which furthers the policy underlying those provisions which is protected." *Fowler,* 653 F.Supp. at 694.

9. Similarly, in *Wheeler v. Caterpillar Tractor Co.,* 108 Ill.2d 502, 92 Ill.Dec. 561, 485 N.E.2d 372 (1985), the court determined that an employee stated a cause of action for retaliatory discharge when he was fired after refusing to work with an improperly functioning radioactive machine whose condition violated federal regulations. The court reviewed its *Palmateer* decision and concluded: "The protection of the lives and property of citizens from the hazards of radioactive material is as important and fundamental as protecting them from crimes of violence." *Id.* 92 Ill.Dec. at 566, 485 N.E.2d at 377. The same reasoning applies to protecting Illinois citizens from the hazards of fire in high rise apartment buildings. *See also Belline,* at 186–87.

10. This case does not involve the issue that divided the panel in *Belline*—whether Illinois would protect, through the tort of retaliatory discharge, the employee who reports a violation of law within the firm as opposed to public officials.