ROBERT W. HERBSTER, Plaintiff-Appellant, v. NORTH AMERICAN COMPANY FOR LIFE AND HEALTH INSURANCE, Defendant-Appellee.

Second District    No. 85—0042

Opinion filed November 26, 1986.

22

John M. Bowlus, of Chicago, for appellant.

Russell M. Pelton, of Peterson, Ross, Schloerb & Seidel, of Chicago, and Matthew H. Patton, of Kilpatrick & Cody, of Atlanta, Georgia, for appellee.

JUSTICE STROUSE delivered the opinion of the court:

The plaintiff, Robert W. Herbster, a licensed attorney, brought suit for retaliatory discharge against his employer, North American Company for Life and Health Insurance (North American). The suit was premised on plaintiff's refusal to destroy or remove documents from North American's files which had been requested in lawsuits pending in the Federal court in Alabama against North American and other insurance companies. These documents were generated by North American in its actuarial department and contained information which, if made available to the Alabama plaintiffs, tended to support allegations of fraud in the sale of so-called flexible annuities sold by North American. On December 28, 1984, the trial court granted North American's motion for summary judgment. This appeal followed.

The plaintiff was employed as chief legal officer and vice-president in charge of the legal department for North American under an oral contract which was terminable at will. Plaintiff claimed that he was discharged for refusing to destroy or remove discovery information. He further alleged that if he had not refused, it would have constituted a fraud on the Federal court of Alabama and would have caused him to violate Rules 1—102(5) and 7—109(a) of the Code of Professional Responsibility (87 Ill. 2d Rules 1—102(5), 7—109(a)).

North American filed its motion for summary judgment charging that: (1) there was no genuine issue as to any material fact; (2) there was no cause of action for retaliatory discharge by an attorney who is terminated by his client; (3) plaintiff was discharged because of the quality of his work; and (4) they never ordered, demanded, or directed plaintiff to destroy or remove any discovery information.

The trial court granted summary judgment to North American because of the attorney-client relationship. Plaintiff appeals.

■ There are two elements to a claim for retaliatory discharge: (1) the employer discharged the employee in retaliation for the employee's activities, and (2) the discharge was in contravention of a clearly mandated public policy. *Midgett v. Sackett-Chicago, Inc.* (1984), 105 Ill. 2d 143, 148; *Palmateer v. International Harvester Co.* (1981), 85 Ill. 2d 124.

There is no question that there are public policy considerations in

this case to support the second element of the tort. Supreme Court Rules would be contravened (87 Ill. 2d Rules 1—102, 7—102(a)(3), 7—109(a)); justice would be obstructed (see, *e.g.,* Ill. Rev. Stat. 1983, ch. 38, par. 31—4(a)); and destroying documents would be fundamentally incompatible with this State's broad discovery policies (*Consolidation Coal Co. v. Bucyrus-Erie Co.* (1982), 89 Ill. 2d 103, 118). Clearly, these matters "strike at the heart of a citizen's social rights, duties, and responsibilities." *Palmateer v. International Harvester Co.* (1981), 85 Ill. 2d 124, 130.

We must decide, however, whether an attorney, as general counsel and an employee of a corporation, is entitled to bring a claim for retaliatory discharge. Counsel does not cite nor does our research disclose any case on point. Therefore, we must examine the historical considerations of the tort itself and whether plaintiff is an employee within the meaning of established case law.

■■ In 1978, our supreme court determined that an employee discharged for taking advantage of the benefits of the Workers' Compensation Act (Act) (Ill. Rev. Stat. 1977, ch. 48, par. 138.1 *et seq.*), even though he was terminable at will, could sue for the tort of retaliatory discharge. (*Kelsay v. Motorola, Inc.* (1978), 74 Ill. 2d 172.) The tort was recognized as an exception to the general rule that an at-will employee has no recourse for discharge. The court held that an employer's otherwise absolute power to terminate at will should not prevail when it was exercised to prevent an employee from asserting his statutory rights under the Act and that the Act itself would be seriously undermined if such conduct were permitted. In so holding, the court realized that many employees whose common law rights had been supplanted by the Act would be left without a remedy since they would want to keep their jobs rather than seek compensation under the Act. (*Kelsay v. Motorola, Inc.* (1978), 74 Ill. 2d 172, 182.) The court refused to accept a construction of the Act which allowed employers to place employees in the position of choosing between their jobs and seeking compensation. 74 Ill. 2d 172, 184.

In *Palmateer v. International Harvester Co.* (1981), 85 Ill. 2d 124, the supreme court again considered the tort of retaliatory discharge. An employee of International Harvester alleged that he was discharged both for supplying information to local law-enforcement authorities that another employee might be involved in a violation of the Criminal Code and for agreeing to assist in the investigation and trial of the employer if requested. The court emphasized the growing need for the tort of retaliatory discharge as an exception to the general rule that an at-will employment is terminable without cause at any

time. 85 Ill. 2d 124, 128.

With the rise of large corporations conducting specialized operations, and the employment of relatively immobile workers who often have no other place to market their skills, this exception realistically recognized that an employer and an employee do not stand on equal footing. The exception also recognized that unchecked employer power presented a distinct threat to public policies adopted by society as a whole. Thus, the court maintained a proper balance between the employer's interest in operating a business efficiently, the employee's interest in earning a livelihood, and society's interest in seeing that public policies are carried out. (*Palmateer v. International Harvester Co.* (1981), 85 Ill. 2d 124, 129.) The court reviewed retaliatory-discharge cases from other States. The cause of action was generally allowed when a well-defined public policy was at stake. Where purely private interests were concerned and there was no well-defined public policy, the claim was disallowed. 85 Ill. 2d 124, 131.

As the lower courts in Illinois applied the law, they were not in accord when employees were covered by a union contract with a grievance procedure to protect them. *Midgett v. Sackett-Chicago, Inc.* (1984), 105 Ill. 2d 143, resolved that conflict in holding that there was no valid reason to protect noncontractual employees while limiting contractual employees to remedies under collective-bargaining agreements. The punitive damages remedy afforded by the tort of retaliatory discharge added a remedy not provided for in union contracts, and such damages should discourage an employer's misconduct in the future. *Midgett v. Sackett-Chicago, Inc.* (1985), 105 Ill. 2d 143, 150.

Recently, the supreme court again extended the tort of retaliatory discharge to apply to a municipal employee who sought benefits under the Workers' Compensation Act. (*Boyles v. Greater Peoria Mass Transit District* (1986), 113 Ill. 2d 545.) The court, however, limited its expansion by upholding a statute prohibiting punitive damages against municipalities.

Although the tort has been extended since it was recognized less than a decade ago, the supreme court admonished against expanding it in *Barr v. Kelso-Burnett Co.* (1985), 106 Ill. 2d 520. The court stated:

"[T]his court has not, by its *Palmateer* and *Kelsay* decisions, 'rejected a narrow interpretation of the retaliatory discharge tort' and does not 'strongly support' the expansion of the tort. The common law doctrine that an employer may discharge an employee-at-will for any reason or for no reason is still the law in Illinois ***." (106 Ill. 2d 520, 525, citing *Palmateer v. Inter-*

*national Harvester Co.* (1981), 85 Ill. 2d 124, 128-30.)

Following this admonishment, one court refused to expand the retaliatory-discharge tort to allow a former special assistant Attorney General to sue his supervisors rather than his employer. (*Morton v. Hartigan* (1986), 145 Ill. App. 3d 417, 421-22.) And, in *Graf v. Elgin, Joliet & Eastern Ry. Co.* (7th Cir. 1986), 790 F.2d 1341, plaintiff's State tort action for retaliatory discharge was limited by the preemption of Federal law. *Cf. Wheeler v. Caterpillar Tractor Co.* (1985), 108 Ill. 2d 502, 508 (State law is preempted to the extent that it actually conflicts with Federal law).

The question remains whether we should extend the tort of retaliatory discharge to the plaintiff.

Plaintiff argues that although he is an attorney, he is only an employee of North American and as such is entitled to bring this action for retaliatory discharge. In support of his argument, plaintiff states that he was a salaried employee of the corporation, his position was terminable at will, and it was his only employment. He owed duties to the corporate board of directors and shareholders, as well as to its officers. His work was subject to review by his superiors. Plaintiff's relationship with the corporation was of a permanent nature, unlike the usual attorney-client relationship. He looked to North American for his compensation, career development, and job security. Like the president, vice-president, and directors, plaintiff was an employee of North American.

However, we cannot separate plaintiff's role as an employee from his profession. Unlike the average employee, plaintiff was a registered attorney subject not only to North American's review but also, like other attorneys, subject to disciplinary review and the Code of Professional Responsibility. His duties with the corporation were primarily restricted to legal matters. His job title was legally descriptive. Although he owed duties to corporate superiors, it is significant that Supreme Court Rule 721 allows attorneys to form professional service corporations where they are permitted to practice law as corporate employees, officers, directors, and shareholders. (87 Ill. 2d R. 721.) Moreover, the rule "does not diminish or change the obligation of each attorney engaged in the practice of law in behalf of the corporation or association to conduct himself in accordance with the standards of professional conduct applicable to attorneys licensed by" the court. (87 Ill. 2d R. 721(b).) Furthermore, as an employee, there is no dispute about his recompense being for legal services only. (*Atwood v. Curtiss Candy Co.* (1959), 22 Ill. App. 2d 369, 371.) Plaintiff's duties were legal in nature, and his relationship with his profession as an at-

torney was and will continue to be pervasive.

Moreover, unlike the employees in the present retaliatory-discharge cases, attorneys occupy a special position in our society. As professionals closely supervised by the Supreme Court of Illinois, their conduct is governed by State statutes and legal precedent. In representing clients in civil and criminal matters, their authority is extremely broad. The attorney is placed in the unique position of maintaining a close relationship with a client where the attorney receives secrets, disclosures, and information that otherwise would not be divulged to intimate friends.

█▌ █ Confidential communications related by a client remain inviolate by the attorney both during the attorney-client relationship and after it has been terminated. For example, attorneys are not freely permitted to breach the attorney-client confidences to promote their own cause. (*Cannon v. U.S. Acoustics Corp.* (N.D. Ill. 1975), 398 F. Supp. 209, 222.) The attorney-client privilege is the oldest of the privileges of confidential communications known to the common law. (*Upjohn Co. v. United States* (1981), 449 U.S. 383, 389, 66 L. Ed. 2d 584, 591, 101 S. Ct. 677, 682.) Its purpose is to encourage and promote full and frank consultation between a client and legal advisor by removing the fear of compelled disclosure of information. *Consolidation Coal Co. v. Bucyrus-Erie Co.* (1982), 89 Ill. 2d 103, 117-18.

Accordingly, the law places special obligations upon an attorney by virtue of this close relationship. Those obligations are referred to generally as the fiduciary duty of the attorney. It permeates all phases of the relationship, including the contract for employment. An attorney's duty to his client includes not taking advantage of the client's trust. An attorney must inform his client of all basic material facts affecting his employment. This protection of the client is so important that all transactions between an attorney and a client are subject to the closest scrutiny. Thus, where an attorney's fiduciary duty comes into play, the attorney has a burden of showing fairness, good faith, adequacy of consideration, and freedom from undue influence. (*Neville v. Davinroy* (1976), 41 Ill. App. 3d 706, 709.) In the relation of client and attorney, " 'there is that confidence reposed in the latter which gives rise to very strong influences over the actions, rights and interests of the former. Hence the law, with a wise providence, not only watches over all the transactions of parties in this relation, but often interposes to declare transactions void, which, between other persons, would be good.' " *Miller v. Solomon* (1964), 49 Ill. App. 2d 156, 163, quoting *Jennings v. McConnel* (1855), 17 Ill. 148, 150.

In construing a contract between an attorney and his client, the

court said:

> "The reason for the doctrine is to be found in the nature of the relation, which exists between attorney and client. That relation is one of confidence, and gives the attorney great influence over the actions and interests of the client. In view of this confidential relation, transactions between attorney and client are often declared to be voidable, which would be held to be unobjectionable between other parties. The law is thus strict, 'not so much on account of hardship in the particular case, as for the sake of preventing what might otherwise become a public mischief.' " *Elmore v. Johnson* (1892), 143 Ill. 513, 525.

■■■ Generally, the authority of an attorney terminates when the matter for which he has been retained itself ends. However, the general rule is that a client may terminate the relationship between himself and his attorney with or without cause. (*Tobias v. King* (1980), 84 Ill. App. 3d 998, 1000.) This right is implied in every contract of employment and is deemed necessary because of the deeply embedded concept of the confidential nature of the relationship between the attorney and the client and the evil that would obviously be engendered by any friction or distrust. *Rhoades v. Norfolk & Western Ry. Co.* (1979), 78 Ill. 2d 217, 228; *Savich v. Savich* (1957), 12 Ill. 2d 454, 457-58.

■ Thus, it has been held that the right to terminate the relationship includes the client's right to substitute other counsel. *Savich v. Savich* (1957), 12 Ill. 2d 454, 457.

> " 'A client is always entitled to be represented by counsel of his own choosing. [Citation.] The attorney-client relationship is consensual, highly fiduciary on the part of counsel, and he may do nothing which restricts the right of the client to repose confidence in any counsel of his choice. [Citation.] No concept of the practice of the law is more deeply rooted. The lawyer's function is to serve, but serve he must with fidelity, devotion and erudition in the highest traditions of his noble profession.' " *Corti v. Fleisher* (1981), 93 Ill. App. 3d 517, 522-23, quoting *Dwyer v. Jung* (1975), 133 N.J. Super. 343, 347, 336 A.2d 498, 500.

■ Moreover, because of the confidential nature of the relationship, a client has exclusive control over the subject matter of the litigation and may dismiss or settle a cause of action regardless of the attorney's advice (7 Am. Jur. 2d *Attorneys at Law* sec. 179 (1980)) or objections (7 Am. Jur. 2d *Attorneys at Law* sec. 181 (1980)). The litigant, despite a contingent-fee contract and the service of an attor-

ney's lien, can dismiss his lawsuit at will, and the attorney has no cause of action absent proof of settlement. A lawyer cannot compel continuation of litigation to protect his lien rights, which are inferior to the client's right to dismiss his action. (*Marcus v. Wilson* (1973), 16 Ill. App. 3d 724, 732; *Anastos v. O'Brien* (1972), 3 Ill. App. 3d 1015, 1021.) A client has the right to compromise his cause in order to avoid the anxiety resulting from it. If a lawyer attempts to draw a contract whereby the client is prevented from settling or continuing his own suit, the contract is void. *Cameron v. Boeger* (1902), 200 Ill. 84, 92.

The law is clear that upon termination of the relationship by the client, the attorney is entitled to fees for the reasonable value of his services, which may be in addition to the contract fee. However, the client's interests are not overlooked. For example, one attorney relied on legal advice to continue his obligation to prepare a case after he was discharged by the client. The court held that he was not entitled to compensation after discharge, although the attorney was commended for seeking professional advice and continuing his efforts on behalf of his client. Once discharged, the court could not continue to recognize the attorney against the wishes of his former client. *Meeker v. Gray* (1986), 142 Ill. App. 3d 717, 724.

■■ ■ On reasonable notice, an attorney may also end the attorney-client relationship with or without cause so long as the client is not left in a position where he is prejudiced. (87 Ill. 2d R. 13.) The right to terminate the relationship includes failing to pay money due, refusal to cooperate in the appropriate handling of matters, or conduct which degrades or humiliates the attorney. A lawyer may also withdraw when it becomes apparent he may be called as a witness. Withdrawal from representation is not only an appropriate response but may be mandated for an attorney when the client threatens to commit a crime. (See *Nix v. Whiteside* (1986), 475 U.S. 157, ____, 89 L. Ed. 2d 123, 136, 106 S. Ct. 988, 996.) *Anders v. California* (1967), 386 U.S. 738, 18 L. Ed. 2d 493, 87 S. Ct. 1396, permits an appointed lawyer to withdraw from a criminal case when he has thoroughly reviewed the record, considered any issues raised or that might be raised by his client, and determines that the case is wholly frivolous. See also *People v. Jones* (1967), 38 Ill. 2d 384; *People v. Richards* (1983), 118 Ill. App. 3d 550.

■■ The mutual trust, exchanges of confidence, reliance on judgment, and personal nature of the attorney-client relationship demonstrate the unique position attorneys occupy in our society. Attorneys are governed by different rules and have different duties and respon-

sibilities than the employees in recent retaliatory-discharge cases. Most employees do not have the mutuality of choice that is inherent in the professional relationship which attorneys enjoy. The attributes of the relationship are so important that we cannot permit this expansion of the exception to the general rule which would have a serious impact on that relationship. The attorneys in their briefs and arguments focused on the privilege aspect of the relationship only. We find that all aspects are so necessary to our system of jurisprudence that extending this tort to the attorney-client relationship here is not justified. Accordingly, we hold that the tort of retaliatory discharge is not available to an attorney under these circumstances.

Affirmed.

NASH, P.J., and HOPF, J., concur.