ROGER J. BALLA, Plaintiff-Appellant, v. GAMBRO, INC., *et al.*, Defendants-Appellees.

First District (1st Division)   No. 1—88—2955

Opinion filed September 10, 1990.

Alan O. Amos & Associates, P.C., of Chicago (Alan O. Amos, of counsel), for appellant.

Pedersen & Houpt, P.C., of Chicago (Arthur Sternberg, of counsel), for appellees.

JUSTICE O'CONNOR delivered the opinion of the court:

Roger J. Balla (Balla), an attorney, sued his previous employer, Gambro, Inc. (Gambro); its affiliate, Gambro Dialysatoren, KG (Gam-

bro Germany); Gambro's corporate parent, Gambro Lundia, AB (Gambro Sweden); and Gambro's president, David Maupin (Maupin), alleging retaliatory discharge. The trial court entered summary judgment for Gambro *et al.*, holding that since Balla was an attorney, he was barred from bringing a retaliatory discharge claim. Balla appeals.

Gambro is a distributor of kidney dialysis equipment manufactured by Gambro Germany. Among the products manufactured and distributed are dialyzers, which filter excess fluid and toxic substances from the blood of patients with impaired or no kidney function. The manufacture and sale of dialyzers is regulated by the United States Food and Drug Administration (FDA) under the United States Food, Drug and Cosmetic Act (Act), 21 U.S.C. §331 *et seq.* (1988), and FDA regulations, 21 C.F.R. §§820.150 through 820.198 (1987).

Gambro hired Balla in March 1980, as manager of personnel and general counsel. According to Gambro's 1983 corporate organization chart, Balla also held the position of manager of regulatory affairs.[1] The position of manager of regulatory affairs was described as an individual who was "responsible for ensuring awareness of and compliance with federal, state and local laws and regulations affecting the company's operations and products." The position required a "B.S. degree plus 3-5 years experience in the medical device field plus 2 years experience in the area of governmental regulations."

By letter dated July 1985, Gambro Germany informed Gambro that defective dialyzers would be shipped. Gambro Germany further advised Gambro:

> "For acute patients risk is that the acute uremic situation will not be improved in spite of the treatment, giving continuous high levels of potassium, phosphate and urea/creatine. The [chronic] patient may note the effect as a slow progression of the uremic situation and depending on the interval between medical check-ups *the medical risk may not be overlooked.*" (Emphasis added.)

At this time, Balla alleges that he informed Maupin that Gambro's sale of these dialyzers would have to be reported to the FDA.

Nevertheless, in a telex dated July 19, 1985, Maupin informed Gambro that "[w]e [Gambro] are going to sell the *** [defective dialyzers] to a unit that is not currently our customer but who buys only on price." In August 1985, the dialyzers arrived at Gambro's facility. In Balla's deposition, he stated that as an individual as well as an at-

---

[1]The Gambro corporate organization chart referred to Balla's positions as "Dir. of Admin./Personnel; General Counsel; Mgr. of Regulatory Affairs."

torney, he was of the opinion that "the dialyzers were misbranded and/or adulterated."

On September 4, 1985, Maupin terminated Balla from Gambro's employment. Later that day, Gambro shipped some of the defective dialyzers to customers. On September 5, 1985, Balla reported the defective shipment to the FDA. The FDA seized the shipment and determined the product to be "adulterated within the meaning of section 501(h) [of the Food, Drug, and Cosmetic Act]."

Subsequently, Balla filed his complaint alleging retaliatory discharge and seeking monetary damages. Initially, the trial court dismissed the action against Maupin, Gambro Sweden, and Gambro Germany. Then, the court granted Gambro's summary judgment motion, holding that Balla's complaint failed to state a cause of action pursuant to *Herbster v. Northern American Co. for Life & Health Insurance* (1986), 150 Ill. App. 3d 21, 501 N.E.2d 343, *appeal denied* (1987), 114 Ill. 2d 545, 508 N.E.2d 728, *cert. denied* (1987), 484 U.S. 850, 98 L. Ed. 2d 105, 108 S. Ct. 150, because Balla was an attorney. Balla appeals.

■ Balla argues that he was standing to bring a cause of action for retaliatory discharge, notwithstanding the *Herbster* decision. We agree. Retaliatory discharge is an exception to the general rule that an at-will employment relationship may be terminated at any time for any or no cause. Notwithstanding the at-will employment relationship, the law recognizes a cause of action when it is alleged that the employee was discharged in retaliation for his activities, and that the discharge was in contravention of a clearly mandated public policy. (*Wheeler v. Caterpillar Tractor Co.* (1985), 108 Ill. 2d 502, 505, 485 N.E.2d 372, *cert. denied* (1986), 475 U.S. 1122, 90 L. Ed. 2d 187, 106 S. Ct. 1641; *Palmateer v. International Harvester Co.* (1981), 85 Ill. 2d 124, 134, 421 N.E.2d 876.) Accordingly, Balla has alleged that he was discharged because he opposed the distribution of allegedly "misbranded and/or adulterated dialyzers" and that his discharge contravenes public policy.

■ Public policy clearly favors the prevention of interstate and intrastate distribution of "misbranded and/or adulterated dialyzers." This public policy is exemplified by Federal and State statutes which criminalize the distribution of defective dialyzers. (21 U.S.C. §331 *et seq.* (1988); Ill. Rev. Stat. 1987, ch. 56½, par. 501 *et seq.*) Moreover, "[t]here is no public policy more important *** than the one favoring the effective protection of the lives and property of citizens." (*Wheeler v. Caterpillar Tractor Co.* (1985), 108 Ill. 2d 502, 511, 485 N.E.2d 372, *cert. denied* (1986), 475 U.S. 1122, 90 L. Ed. 2d 187, 106

S. Ct. 1641; *Palmateer v. International Harvester Co.* (1981), 85 Ill. 2d at 132, 421 N.E.2d at 876.) Therefore, Balla clearly alleged two public policies that support that his termination was wrongful: (1) a public policy which favors his refusal to engage in Gambro's alleged illegal activities; and (2) a public policy which favors the protection of citizens' lives by opposing the distribution of allegedly "misbranded and/or adulterated dialyzers."

■■ ■ If Balla had been a layman-employee rather than an attorney-employee, there would be no question as to his standing to bring a cause of action for retaliatory discharge. However, because Balla was Gambro's in-house counsel and held several positions with Gambro, the question of standing becomes less obvious because we must consider the nature and sanctity of the attorney/client relationship. Some courts have refused to grant attorneys standing in a retaliatory discharge action fearing that the attorneys would breach their fiduciary duty by disclosing their client's confidential information and fearing that clients would not be able to terminate their attorney at any time. The issue of whether Balla has standing to bring a cause of action for retaliatory discharge turns on the outcome of the following three-part analysis.

First, if Balla's discharge resulted from information he learned as a "layman" in a nonlegal position, then the attorney/client relationship would not be compromised and privileged information would not be disclosed. Accordingly, Balla would have standing to bring a cause of action for retaliatory discharge.

Second, if the court cannot determine that Balla's discharge resulted from information he learned as a layman, then he is deemed to have learned the information in his capacity as an attorney.[2] At which time, the questions of fact are: (a) whether Balla learned the information as a result of the attorney/client relationship; and (b) whether the information was privileged. If the answer to either of these questions is "no," then Balla has standing to bring a cause of action. However, if the court determines that there was an attorney/client relationship and that the information was privileged, then it should consider whether the privilege was waived. Assuming the privilege was waived, Balla has standing to bring a cause of action for retaliatory discharge.

---

[2]ABA Formal Opinion 328, June 1972, states that "[i]f the second occupation is so law-related that the work of the lawyer in such occupation will involve, inseparably, the practice of law, the lawyer is considered to be engaged in the practice of law while conducting that occupation."

Finally, even if Balla's discharge resulted from information he learned in his capacity as an attorney, that the information was privileged and that the privilege was not waived, the court must determine whether there were any countervailing public policies favoring disclosure of privileged information. The sanctity of the attorney/client privilege is not an absolute bar to disclosure. To the contrary, certain exceptions exist which either mandate or permit disclosure. Disclosure is mandated by Rule 4—101(c) of the Code of Professional Responsibility, which states that "[a] lawyer *shall* disclose information about a client to the extent it appears necessary to prevent the client from committing an act that would result in death or serious bodily harm to another person, and to the extent required by the law." (Code of Professional Responsibility (87 Ill. 2d R. 401(c)).) Likewise, Rule 4—101(d)(3) permits a lawyer to reveal the intention of a client to commit a crime other than those enumerated in Rule 4—101(c). (Code of Professional Responsibility (87 Ill. 2d R. 4—101(d)(3)).) After balancing the competing public policies of the attorney/client privilege versus protecting individuals from serious bodily harm or death, we find clear support in favor of disclosing information when the attorney reasonably believes it is necessary to prevent serious bodily harm or death.

■ Further, Balla's attempt to recover monetary damages, rather than reinstatement, is not contrary to the client-employer's right to terminate his attorney-employee at will. The client-employer can terminate the attorney-employee. However, the client-employer may be liable for damages to the attorney-employee if the termination was in retaliation for the employee's activities and contravenes public policy. See *Parker v. M&T Chemicals, Inc.* (1989), 236 N.J. Super. 451, 566 A.2d 215.

■ Therefore, Balla is not precluded, as a matter of law, from standing to bring a cause of action for retaliatory discharge, notwithstanding the *Herbster* decision. (*Herbster v. North American Co. for Life & Health Insurance* (1986), 150 Ill. App. 3d 21, 501 N.E.2d 343, *appeal denied* (1987), 114 Ill. 2d 545, 508 N.E.2d 728, *cert. denied* (1987), 484 U.S. 850, 98 L. Ed. 2d 105, 108 S. Ct. 150.) In *Herbster*, the plaintiff, who was in-house counsel, was asked by his client to destroy or remove discovery information in litigation in which he was directly participating. After plaintiff Herbster refused the request, he was fired. The *Herbster* court held that an attorney, who was terminated by his client, was barred from filing a cause of action for retaliatory discharge. The *Herbster* court's rationale was premised on the sanctity of the attorney/client privilege. We agree with the *Herbster*

court; however, we distinguish the *Herbster* facts. First, we note that plaintiff Herbster was clearly acting in his capacity as an attorney and was subject to the attorney/client privilege because he was directly involved in the litigation when he was asked to destroy discovery requested in that litigation. Secondly, in *Herbster*, neither of the public policy concerns recognized by Illinois courts relating to the conduct of illegal activities and the protection of citizens lives were present.

■■ ■ Finally, Balla argues that Gambro Sweden, Gambro Germany, and Maupin are proper parties to the retaliatory discharge action. We agree that the trial court erred in dismissing Gambro Sweden and Gambro Germany as defendants because questions of fact exist regarding whether Balla was their employee and whether they participated in a conspiracy to terminate Balla's employment. However, we reject Balla's argument that the trial court erred in dismissing defendant Maupin.[3] This district has held that an individual who personally participated in the tort is insulated from liability because he is not the employee's employer, merely the employer's agent. (*Motsch v. Pine Roofing Co.* (1988), 178 Ill. App. 3d 169, 177, 533 N.E.2d 1; *Morton v. Hartigan* (1986), 145 Ill. App. 3d 417, 421, 495 N.E.2d 1159.) Accordingly, the trial court properly dismissed defendant Maupin.

In conclusion, the trial court erred in determining, as a matter of law, that Balla was barred from bringing a cause of action for retaliatory discharge because questions of fact exist. Specifically: (1) whether Balla's discharge resulted from information he learned as a "layman" in a nonlegal position; (2) whether Balla learned the information as a result of the attorney/client relationship, if so, whether the information was privileged, and if it was privileged, whether the privilege was waived; and (3) whether there were any countervailing public policies favoring disclosure of privileged information learned from the attorney/client relationship. Furthermore, Gambro Sweden and Gambro Germany were properly named defendants because ques-

---

[3] The second district would apparently agree with Balla, because it has held that a retaliatory discharge action could be brought against the agent who effected the discharge, where the actions of the agent rendered the principal liable. (*Fellhauer v. City of Geneva* (1989), 190 Ill. App. 3d 592, 602, 546 N.E.2d 791, *appeal allowed* (1990), 129 Ill. 2d 563, 550 N.E.2d 555.) The *Fellhauer* court noted that to hold otherwise would unduly weaken the tort of retaliatory discharge and defeat one of its underlying purposes, which is to prevent employers from discharging their employees in violation of public policy. *Fellhauer v. City of Geneva* (1989), 190 Ill. App. 3d at 601-02, 546 N.E.2d 791.

tions of fact exist regarding whether they participated in a conspiracy to terminate Balla, and whether Balla was their employee. However, the trial court properly dismissed defendant Maupin. Accordingly, the summary judgment for Gambro, Gambro Germany, and Gambro Sweden is reversed; the judgment for Maupin is affirmed; and the case is remanded for further proceedings consistent with this opinion.

Affirmed in part; reversed and remanded in part.

BUCKLEY, P.J., and MANNING, J., concur.

