SECOND DIVISION

December 9, 1997

No. 1-96-2962

ALAN P. JACOBSON, ) Appeal from the

) Circuit Court of

Plaintiff-Appellee, ) Cook County.

)

v. )

)

KNEPPER and MOGA, P.C., ) Honorable

) Kenneth Gillis,

Defendant-Appellant. ) Judge Presiding.

JUSTICE McNULTY delivered the opinion of the court:

Plaintiff-appellee, Alan P. Jacobson (Jacobson), an attorney 

licensed to practice in the State of Illinois, brought this action

against the law firm of Knepper and Moga, P.C. (Knepper), seeking damages for injuries resulting from his wrongful discharge from the firm. The one-count complaint sought compensatory and punitive damages.

Jacobson's complaint alleged that on July 14, 1994, he was hired as an associate of Knepper, and in August of that year he discovered the firm was filing consumer debt collection actions in Cook County, Illinois, in violation of the venue provisions of the Fair Debt Collection Practices Act, (15 U.S.C. §1692i(a)(2)(B) (1988)) and the Illinois Collection Agency Act (225 ILCS 425/9(20) (West 1994)). He further alleged that in August of 1994, he spoke with James Knepper, one of the law firm's principal partners, about this problem and was advised it would be corrected.

The complaint further recited that in April of 1995, he was promoted to the position of office manager, reporting directly to the firm's partners. In his new position Jacobson was placed in charge of training and supervising the law firm's collection department. Additionally, as a licensed attorney, Jacobson was asked to review all draft complaints filed in consumer debt collection cases and sign them for filing purposes. Shortly thereafter, Jacobson learned that the firm was continuing to file debt collection actions in violation of the venue provisions of the acts referred to above. He again brought the matter to the attention of Mr. Knepper, who again told him the matter would be rectified. Within a short while, Jacobson was relieved of his responsibility to review and sign complaints in these cases.

About 10 weeks later Jacobson learned that the improper venue filing practices had not ceased and that complaints he had previously refused to sign had been filed. For the third time he brought the matter to Mr. Knepper's attention and was again told that the matter would be taken care of. About two weeks later Jacobson was terminated, resulting in this cause of action for retaliatory discharge, alleging on information and belief that he had been terminated in retaliation for his insistence that the law firm cease violating the venue provisions of the Fair Debt Collection Practices Act. 

After Knepper filed an answer to Jacobson's complaint and a motion to dismiss, the trial court certified the following question of law pursuant to Supreme Court Rule 308 (134 Ill. 2d R. 308):

"Do the holdings in 
Herbster v. North American Co.
 
for Life & Health Insurance
, 150 Ill. App. 3d. 21, 501 N.E. 2d. 343 (1st Dist. 1986) and 
Balla v. Gambro, Inc.
, 145 Ill. 2d. 492, 584 N.E. 2d. 104 (1991) prevent an attorney licensed to practice in the State of Illinois from maintaining a cause of action for the tort of retaliatory discharge against his non-client law firm employer due to the pre-eminence of the Rules of Professional Conduct?"

Defendant's petition for leave to appeal to the appellate court pursuant to Rule 308 was denied. Defendant then filed an affidavit of intent to seek leave to appeal to the Supreme Court of Illinois pursuant to Supreme Court Rule 315 (134 Ill. 2d R. 315).

The supreme court denied defendant's petition for leave to appeal, but in so doing issued a supervisory order directing this court to allow defendant's previously filed petition for leave to appeal pursuant to Rule 308 and to consider the appeal on its merits. It is pursuant to that order that we review this matter.

We conclude that neither the holding in 
Herbster
, as interpreted by the supreme court in 
Balla
, nor the holding in 
Balla
 itself, precludes an action for retaliatory discharge by Jacobson against 
his employer, Knepper, on the facts alleged in the complaint.  We therefore affirm the trial court.

Knepper asserts that 
Balla
 precludes an attorney from bringing an action for retaliatory discharge against his law firm employer for its actions in continuing to file law suits that he alleged violated the venue provisions of both federal and state debt collection statutes.  Knepper claims that the public interest could adequately be protected by reporting such practices to the Attorney Registration and Disciplinary Commission (ARDC) as the Code of Professional Responsibility (107 Ill. 2d R. 1-103) requires.  At oral argument counsel for Knepper asserted that the in-house counsel status of the discharged lawyers in 
Herbster
 and 
Balla
 was of no legal consequence and that any attorney was precluded from asserting a claim for retaliatory discharge if the employer's  complained-of conduct was reportable to the ARDC pursuant to the Code of Professional Responsibility.

The supreme court in 
Balla
 agreed with the trial court that Balla's claim against Gambro should have been dismissed on the pleadings, but stated "[w]e agree *** that appellee [Balla] does not have a cause of action against Gambro for retaliatory discharge 
under the facts of the case at bar
."  (Emphasis added.)  
Balla
, 145 Ill. 2d at 498.

In 
Balla
, the complaint alleged that the employer/client, Gambro, had discharged in-house counsel, Balla, in retaliation for his advice that Gambro would be in violation of United States Food and Drug Administration (FDA) regulations if it sold a certain shipment of kidney dialyzers and, when informed by the corporation president that they would be sold anyway, said he would do whatever necessary to stop the sale.

The supreme court agreed that a clear public policy was implicated as this contemplated action on the part of Gambro would compromise the effective protection of the lives and property of citizens.  The court, however, made the following observations in foreclosing the retaliatory discharge claim against the attorney's employer/client:

"We agree with the conclusion reached in 
Herbster
 that, generally, in-house counsel do not have a claim under the tort of retaliatory discharge.  However, we base our decision as much on the nature and purpose of the tort of retaliatory discharge, as on the effect on the attorney-client relationship that extending the tort would have.  ***  [W]e caution that our holding is confined by the fact the appellee [Balla] is and was at all times throughout this controversy an attorney licensed to practice law in the State of Illinois.  Appellee is and was subject to the Illinois Code of Professional Responsibility ***.  ***

In this case, the public policy to be protected, that of protecting the lives and property of citizens, is adequately safeguarded without extending the tort of retaliatory discharge to in-house counsel.  Appellee was required under the Rules of Professional Conduct to report Gambro's intention to sell the 'mishandled and/or adulterated' dialyzers."  145 Ill. 2d at 501.

The supreme court in 
Balla
 also emphasized the special relationship that exists between in-house counsel and the employer/client, and how it might be adversely affected by extending the reach of a retaliatory discharge claim:

"Generally, a client may discharge his attorney at any time, with or without cause.  [Citation.] *** As stated in 
Herbster
, 'the attorney is placed in the unique position of maintaining a close relationship with a client where the attorney receives secrets, disclosures, and information that otherwise would not be divulged to intimate friends.'  (
Herbster
, 150 Ill. App. 3d at 27.)  We believe that if in-house counsel are granted the right to sue their employers for retaliatory discharge, employers might be less willing to be forthright and candid with their in-house counsel."  145 Ill. 2d at 503.

"We also believe that it would be inappropriate for the employer/client to bear the economic costs and burdens of their in-house counsel's adhering to their ethical obligations under the Rules of Professional Conduct. *** This *** is impermissible for all attorneys know or should know that at certain times in their professional career, they will have to forgo economic gains in order to protect the integrity of the legal profession."  145 Ill. 2d at 505.

Applying the foregoing observations to the facts pled in this complaint, we cannot conclude that the attorney's in-house counsel relationship with the employer/client that he sued for retaliatory discharge was an unimportant factor in the supreme court's decision in 
Balla
.  The decision of this court in 
Herbster
, cited with approval in 
Balla
, also involved in-house counsel suing his employer/client for retaliatory discharge.

In contrast, in the case at bar, Jacobson was not in-house counsel.  He was employed by Knepper, which he claimed discharged him for objecting to the law firm's practice of filing debt collection cases in the wrong venue.  Jacobson was not questioning the activities of the client on whose behalf the lawsuits were filed, but the practices of Knepper which filed them.

Further, no client confidences were compromised by Jacobson's action againt Knepper.  The suits allegedly filed in the wrong venue had either
 been disclosed through discovery or had been filed in court, which placed them in the public domain.

Therefore, we conclude that neither 
Balla
 nor 
Herbster
 mandates dismissal of this claim at the pleading stage.  In doing so, we note in passing that two cases decided in the United States District Court for the Northern District of Illinois also declined to construe 
Balla
 as precluding an attorney from suing an employer for retaliatory discharge where the relationship of in-house counsel and employer/client did not exist.  See 
Boynton v. Vallas
, No. 92 C 140 (N.D. Ill. 1994); 
Isaacson v. Keck, Mahin & Cate
, 61 Fair Empl. Prac. Cos. (BNA) 1145, 65 Empl. Prac. Dec (CCH) P 43, 243 (1993).

Affirmed.  

TULLY and FROSSARD, JJ., concur.